**Dennis J. DOMEGAN,**
**Plaintiff, Appellee,**

v.

**Michael V. FAIR, et al.,**
**Defendants, Appellants.**

No. 88–1142.

United States Court of Appeals,
First Circuit.

Heard July 26, 1988.

Decided Oct. 20, 1988.

Stephen G. Dietrick, Deputy Gen. Counsel, Dept. of Correction, with whom Nancy Ankers White, Sp. Asst. Atty. Gen., and Lena M. Wong, Counsel, Dept. of Correction, were on brief, for defendants, appellants.

Paul E. Nemser with whom Paula M. Bagger, Helene Kazanjian and Goodwin, Procter & Hoar, were on brief, for plaintiff, appellee.

Before BOWNES, NOONAN,* and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Because this is an interlocutory appeal which involves us but peripherally in the merits of the case, we offer an abbreviated account of the proceedings and a decurtate explanation concerning the lone matter which lies within our present ken.

### I

Plaintiff-appellee Dennis J. Domegan, a state prisoner, sued various administrators and correctional officials at the Massachusetts Correctional Institute—Walpole (MCI–Walpole), claiming that they had run afoul of 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, Mass.Gen.Laws ch. 12, §§ 11H & 11I (West 1986), in several ways: (1) inflicting cruel and unusual punishment upon him in violation of the Eighth and Fourteenth Amendments to the United States Constitution and the Massachusetts Declaration of Rights, (2) depriving him of liberty without due process of law contrary to the Fourteenth Amendment, and (3) interfering with rights secured by state law. Defendants (appellants before us) sought partial summary judgment on the basis that they were qualifiedly immune from the prayers for money damages. *See generally Anderson v.*

Creighton, —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court denied their motion and simultaneously granted plaintiff partial summary judgment in connection with his due process claims. After reconsideration was denied, this appeal followed.

### II

■ Defendants want to bite off far more than we can allow them to chew. They profess to seek immediate review of (1) the grant of partial summary judgment in plaintiff's favor, (2) the denial of their cross motion for *brevis* disposition on qualified immunity grounds, and (3) the rebuff of their effort to obtain reconsideration and clarification. Yet all three of these rulings are interlocutory; none are "final decisions" within the meaning of 28 U.S.C. § 1291. Because finality is lacking, they are not immediately appealable "unless appellate jurisdiction attaches in some other fashion." *In re Recticel Foam Corp.,* 859 F.2d 1000, 1003–1004 (1st Cir.1988).

■ The middle item in this list of three —the order refusing partial summary judgment on the ground of qualified immunity —is properly before us under the collateral-order exception to the finality rule. *See Mitchell v. Forsyth,* 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–17, 86 L.Ed.2d 411 (1985); *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319, 320 (1st Cir.1987). But the jurisdiction so conferred is severely restricted. *Cheveras Pacheco v. Rivera Gonzalez,* 809 F.2d 125, 127 (1st Cir.1987); *Bonitz v. Fair,* 804 F.2d 164, 166–67, 173–76 (1st Cir.1986). The pendency of a *Mitchell* appeal gives us no purchase to entertain appellants' remaining assignments of error. Notwithstanding that we have jurisdiction to review the denial of qualified immunity midstream, "[a]ny additional claim presented to and rejected by the district court must independently satisfy the collateral-order exception to the final-judgment rule in order for us to ad-

---

* Of the Ninth Circuit, sitting by designation.

dress it on an interlocutory appeal." *Bonitz*, 804 F.2d at 173.

It is too plain to warrant citation of authority that the district court's grant of partial summary judgment in Domegan's favor—a grant which left unresolved his Eighth Amendment and state-law claims, and which, as to due process, adjudicated only liability and not damages—is not a final order; it cannot be said to "resolv[e]" the contested matter, leaving nothing to be done except execution of the judgment." *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir.1988). And that order fails at least three of the four requisites for invocation of the collateral-order exception: it lacks separability, finality, and urgency.[1] The order declining reconsideration is even more clearly outside the scope of interlocutory review. Thus, although we consider the refusal of appellants' *Mitchell* motion, we take no view of any unrelated rulings of the district court. Rather, we focus at this intermediate stage of the litigation exclusively upon (1) the question of whether appellants were erroneously deprived of the benefits of *Harlow* immunity, *see infra* Part III, and (2) certain procedural niceties related to the lower court's decision on qualified immunity, *see infra* Part IV.

## III

On the main issue, we conclude that the record amply supports the district court's rejection of appellants' Rule 56 motion. To explicate our thinking, we look first at the facts as pleaded, and then at the applicable law. In the course of this exposition, we undertake neither to resolve conflicts in the record nor to effectuate credibility determinations. We instead "accept[ ] at face value the facts as presented by [the nonmovant]," *Bonitz*, 804 F.2d at 167, to determine whether they "support a claim of violation of clearly established law." *Mitchell*, 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9.[2]

A. *Factual Mosaic.* Plaintiff's relevant factual averments, repeated under oath, are as follows. During the spring of 1983 Domegan was housed in the departmental segregation unit at MCI–Walpole. The prison then had a policy, known as the Alternate Feeding Program (AFP), which placed inmates who had thrown food or human waste on a specially administered diet for several successive days.[3] While subject to AFP, the affected inmate's solid steel cell door was shut. During the currency of an AFP impost, the door was opened only when necessary for administrative purposes. This was contrary to the usual practice which prevailed in the segregation unit. The AFP utilized a steady, unvarying diet of bread and cheese, supple-

---

**1.** As we have said before, our collateral-order jurisdiction depends on the existence of four essentials:

> The order must involve: (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is "unfinished" or "inconclusive"; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion.

*United States v. Sorren*, 605 F.2d 1211, 1213 (1st Cir.1979); *accord Boreri v. Fiat S.p.A.*, 763 F.2d 17, 21 (1st Cir.1985). We have styled the four requisites as comprising "separability, finality, urgency and importance." *In re Continental Investment Corp.*, 637 F.2d 1, 5 (1st Cir.1980).

**2.** We acknowledge that our precedents are somewhat murky as to whether we must, on a *Mitchell* motion, go beyond the complaint to ascertain whether the record as a whole presents some genuine issue as to a material fact sufficient to bar qualified immunity. *Compare, e.g., Feliciano–Angulo v. Rivera–Cruz*, 858 F.2d 40, 44–45 n. 5 (1st Cir.1987) (considering entire record) and *Emery v. Holmes*, 824 F.2d 143, 147 (1st Cir.1987) (similar) *with Roure v. Hernandez Colon*, 824 F.2d 139, 143 (1st Cir. 1987) (such an inquiry would be "outside the scope of our limited review") and *Bonitz v. Fair, supra* (similar). We need not resolve that question today. In this case, plaintiff, having personal knowledge of the circumstances of his confinement, has reiterated the key allegations of his complaint under oath, by affidavit and in a deposition. Thus, even if we were to go outside the complaint as *Feliciano–Angulo* suggests, the result would be unaffected.

**3.** The AFP, as described herein, has not been used at MCI–Walpole since November 1, 1983. It has been replaced by modified versions which, at last glance, bore little resemblance to the original.

mented solely with the tap water available in the cells. To receive these rations, an inmate was required to turn on the cell's light and lie face down on his cot. Prison officials styled the AFP as an "administrative remedy;" under that rubric, inmates were afforded neither notice nor any predeprivation procedure by which they could challenge the imposition of the regimen.

Domegan was twice placed on AFP after prison officials unilaterally determined that he had thrown food or waste. During the May confinement (which lasted 7½ days), Domegan received only four meals. That July, during 5 days under the AFP regimen, he received none. The reason for this enforced asceticism, appellee claims, was that defendants shut off the supply of water and electricity to his cell while he was subject to the AFP. Because he could not switch on the light in order to comply with requirements for receiving even the Spartan fare which the AFP permitted, he went hungry. Appellant further alleges that, even had he received his stipulated allotment of bread and cheese, his diet would still have been nutritionally inadequate.

■ B. *Discussion.* In this posture of the case, the denial of partial summary judgment evidences the district court's conclusion that, "if the facts are as asserted by the plaintiff, the defendant[s] [are] not immune." *Mitchell*, 472 U.S. at 527, 105 S.Ct. at 2816. Here, such a conclusion cannot be faulted.

Qualified immunity is an affirmative defense which, if successfully pleaded and maintained, discharges officials from the need to stand trial on damage claims. The defense is unavailable when an official has violated a "clearly established" right. *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738. In this context, the phrase "clearly established" has a precise definition: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 107 S.Ct. at 3039. Put another way, "in the light of preexisting law the unlawfulness must be apparent." *Id.* Although the standard may be regarded as "purely legal," it—like so many other "le-

gal" concepts—is informed by the factual parameters of a given case.

■ Prison officials must act "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed. 2d 451 (1976). The punishment meted out by the sentencing courts provides the minimum treatment and maximum punishment to be accorded the inmate, within the encincture set by the state's allowable rules. In other words, the discretionary acts of prison officials are bounded by the terms of the sentence. Thus, prison officials are free to transfer inmates from one facility to another within the correctional system, provided state rules allow it and the inmate could have been sent to any of the facilities upon commencing his sentence. *See, e.g., Meachum*, 427 U.S. at 224–27, 96 S.Ct. at 2538–40. Prison officials may not, however, punish an inmate beyond the terms of confinement set by the court and the state's rules for prisons. *Hewitt v. Helms*, 459 U.S. 460, 467–68, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983). When prison administrators undertake to do something to an inmate on a temporary, but non-emergency, basis that they might not do to an inmate regularly or permanently, due process concerns are implicated.

The Commonwealth concedes that the AFP could not have been permanently or regularly imposed upon a prisoner. Domegan has alleged facts sufficient to give credence to his plaint that the programmed diet failed to meet minimum requirements for daily nutritional adequacy. Moreover, taking his sworn allegations as true, as Rule 56 requires, the AFP was imposed under conditions that isolated Domegan for lengthy periods, behind a windowless and constantly closed steel door, without water or electricity. We have scant doubt that in 1983 the state of the law was such that reasonable prison officials should have known that they lacked authority to place an inmate on a nutritionally inadequate diet and simultaneously isolate him for many days without electricity or water without

affording him even the thinnest sliver of due process.

■ Certainly the statutes and regulations pertaining to state prisoners and prison conditions did not empower appellants to undertake such acts. Quite to the contrary, the Commonwealth's laws, as applicable at the time, specified that each inmate "shall" be provided a "full" meal each day, even in "isolation units." Mass.Gen. Laws ch. 127, § 40 (West 1974). Even when in "segregated units," inmates "shall" be provided "regular meals." Mass.Gen.Laws ch. 127, § 39 (West 1974). The statutory framework hollowed out no interstice wherein an inmate might be deprived of both "regular" and "full" meals. And the drafters' use of the imperative form is telling; the statutes undeniably embody "language of an unmistakably mandatory character...." *Hewitt*, 459 U.S. at 471, 103 S.Ct. at 871. As the *Hewitt* Court noted, "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Id.* at 472, 103 S.Ct. at 871.[4]

In this case, the Commonwealth has not only employed mandatory language, but it has employed language which, on its face, does not contemplate that an inmate may be deprived under any circumstances of the substantive predicate. Thus, not only does the substantive right to a "full" or "regular" meal appear to be guaranteed, but such a right also appears to be virtually absolute. The statutory scheme is clear: at least in non-exigent circumstances, prison officials must provide regular meals to an inmate in segregation and full meals to one in isolation. In neither case was it within their discretion to provide inade-quate meals[5]—let alone meals constrained by conditons precedent that a prisoner could not hope to meet.

Appellants' discretion to deny a convict electricity and water were, at the time, similarly circumscribed. Statutes in force required that cells be outfitted with "light, ventilation and adequate sanitation facilities." Mass.Gen.Laws ch. 127, § 40 (West 1974). And if the officials had any doubt concerning the statute's meaning, they need only have consulted the relevant regulations. Had they done so, the requirements of electric light, Mass.Regs.Code tit. 105, §§ 450.340, 450.343 (1979), working toilet and sink, Mass.Regs.Code tit. 105, § 450.113 (1979), and "... a safe and sanitary supply of water ...," Mass.Regs.Code tit. 105, § 450.126 (1979), would have been apparent to them.

We need not belabor the obvious. *Mitchell* teaches that, on an inquiry such as this, we are not to "consider the correctness of the plaintiff's version of the facts...." 472 U.S. at 528, 105 S.Ct. at 2816. So long as the pleaded facts, substantiated sufficiently to survive conventional Rule 56 muster, *see supra* note 2, make out a paper case, "we must assume that there is liability upon the part of the defendants." *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456, 466 (1st Cir.1985). If plaintiff's right to be free from the claimed harm was clearly established—and in this case, we think that is so—then the defendants do not enjoy *Harlow* immunity. *See, e.g., Bonitz*, 804 F.2d at 166–68. That, in turn, given the circumscribed nature of interlocutory review on a *Mitchell* appeal, *see supra* Part II, ends our present inquiry.

Let us add one further observation. Faithful to this circuit's exposition of the

---

4. Although this is so, the procedural due process requirements which attend administrative confinement are considerably less formal than those which attend disciplinary segregation. *Compare, e.g., Hewitt v. Helms*, 459 U.S. at 472–76, 103 S.Ct. at 871–74, *with Wolff v. McDonnell*, 418 U.S. 539, 563–70, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974). Given the present setting of the case, we leave to the district court in the first instance any decision as to which of these models better suits this situation.

5. We express no opinion as to whether or not the mandated menu of bread, cheese, and water was so nutritionally deficient as to transgress either the Constitution or applicable statutes and regulations. We note merely that Domegan has alleged such a deficiency and has created a genuine issue of fact as to it. This allegation, given the stipulated diet, is not so implausible that it can be disregarded at this stage of the proceedings.

*Mitchell* protocol, we make no distinction at this stage which depends upon the extent to which any individual defendant's conduct may or may not have contributed to the described harm. *See Bonitz*, 804 F.2d at 167–68. That sort of inquiry is essentially a question not of immunity but of causation—and it may be raised by any defendant in an appropriate fashion through resort to Fed.R.Civ.P. 56, or by motion for directed verdict, or on appeal from final judgment.

Moreover, even if it can be argued that the Court's later opinion in *Anderson v. Creighton, supra,* has undercut this aspect of the *Bonitz* model—a matter as to which we presently essay no view—it would not avail appellants. All of their pertinent filings below spoke exclusively to their collective liability. No meaningful attempt at individuation was made. It is too familiar to warrant string citation that we will not consider arguments which could have been, but were not, advanced below. *See, e.g., Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987).

For both of these reasons, the matter of differentiated liability is not properly before us at this moment. And because the record, as we read it, contains sworn, fact-specific allegations which demonstrate the unquestionable clarity of the right violated, the district court did not err in denying appellants' motion for partial summary judgment on qualified immunity grounds.

## IV

Appellants have made an additional request which we address briefly. They say that because the district court denied their motion without oral argument and without delineating specific findings and conclusions, we should remand for correction of these perceived shortcomings.[6] In this case, we decline to do so.

As we have stated with echolalic regularity, the district courts have considerable discretion in deciding whether or not to allow oral argument on a dispositive motion. *E.g., Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 411 (1st Cir.1985) (discussing trial court's "wide latitude," especially in instances "[w]here affidavits, depositions, and other documentary material indicate that the only issue is a question of law, and where the briefs have adequately developed the relevant legal arguments"); *accord Spark v. Catholic University of America*, 510 F.2d 1277, 1280 (D.C.Cir.1975) (per curiam) (due process does not encompass right to oral argument on motion). *See also* D.Mass.Loc.R. 17(d) (hearing on motion within discretion of district court).

In this case, eschewal of oral argument was well within the pale: the question was an essentially legal one, the matters pertaining to qualified immunity were adequately documented, and the parties' contentions were fully developed. Ordinarily, a district court will not be held to have misused its discretion in refusing argument when the complaining party can "point[ ] to no single, definable aspect of its position which could not have been adequately presented by a written submission." *HMG Property Investors, Inc. v. Parque Industrial Rio Canas, Inc.*, 847 F.2d 908, 915 (1st Cir.1988); *see also Dougherty v. Harper's Magazine Co.*, 537 F.2d 758, 761 n. 3 (3d Cir.1976) (Fed.R.Civ.P. 78 authorized district court to use written submissions in lieu of live hearings). As we have said before in a different—but, we think, analogous—context, "hearings cannot be convened at the whim of a suitor, made available like popsicles in July, just because a passerby would like to have one." *United States v. DeCologero*, 821 F.2d 39, 44 (1st Cir.1987).

Nor does the lack of specific findings constitute a meaningful assignment of error. The Civil Rules specifically direct that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56...." Fed.R.Civ.P. 52(a). The rationale for this provision is patent: by definition, summary judgment can be granted only upon a show-

---

**6.** Insofar as the request implicates rulings other than the denial of qualified immunity, it is be-

yond the scope of our interlocutory reconnaissance, and we take no view of it.

ing that "there is no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), thus rendering district court "factfinding" pleonastic.

■ We do not mean to suggest that written opinions or bench decisions which explicate a trial judge's reasoning are not useful to an appellate tribunal. We value such insights. Without them, we are sometimes forced to remand in order to apprehend the basis for decision below. *E.g., Pearson v. Fair,* 808 F.2d 163, 165–66 & n. 2 (1st Cir.1986) (per curiam); *accord Myers v. Gulf Oil Corp.,* 731 F.2d 281, 284 (5th Cir.1984). But the need for such articulation is, as a general rule, greater when a nisi prius court *grants* a dispositive motion than when it *denies* one. In any event, the district judge's reasons for refusing to honor the qualified immunity request in this case were, we suggest, self-evident from the face of the record. We conclude, therefore, that the absence of an explicit statement of the court's reasons for denying appellants' Rule 56 motion was not fatal.

## V

We need go no further. Defendants' motion for partial summary judgment based on the doctrine of *Harlow* immunity was appropriately rejected at this stage of the proceedings. Moreover, it was within the district court's discretion to determine that motion without either (1) oral argument, or (2) the filing of a written opinion. And, as we explain in the text, we do not have jurisdiction to consider presently any of the other matters which appellants seek to raise.

*The order denying partial summary judgment on qualified immunity grounds is affirmed. The case is remanded to the district court for further proceedings.* Costs to appellee.