NORMAN McMANN vs. STATE ETHICS COMMISSION.

No. 90-P-402.

Bristol. December 9, 1991. - April 23, 1992.

Present: WARNER, C.J., SMITH, & LAURENCE, JJ.

Conflict of Interest. Public Employment, Unethical conduct. School and School Committee, Regional school district. Municipal Corporations, Officers and employees. Statute, Construction. Words, "Municipal agency," "Instrumentality."

A regional school district is an instrumentality of each of its member municipalities; therefore a regional district school committee member was a municipal employee for purposes of G. L. c. 268A, the conflict of interest law. [424-428]

CIVIL ACTION commenced in the Superior Court Department on December 15, 1988.

The case was heard by William H. Carey, J., on motions for summary judgment.

Richard Knott for the plaintiff.

Thomas Zampino for the defendant.

WARNER, C.J. After an adjudicatory hearing, the State Ethics Commission (commission) determined that the plaintiff had offended the State conflict of interest law covering public officials and employees by committing violations of G. L. c. 268A, §§ 19 & 20, and assessed a civil penalty of $10,000 pursuant to G. L. c. 268B, § 4(j)(3). On cross motions for summary judgment[1] on the plaintiff's complaint for judicial review and on the commission's counterclaim for en-

_____

[1]While it has been said that summary judgment is "an appropriate procedure since review is confined to the record, except where procedural irregularity before the agency is alleged," Rico's of the Berkshires, Inc. v. Alcoholic Bevs. Control Commn., 19 Mass. App. Ct. 1026, 1026 (1985), when review is had on the administrative record under the standards set out in G. L. c. 30A, § 14(7), "motions for summary judgment are largely

forcement of its decision and order, see G. L. c. 30A, § 14; G. L. c. 268B, § 4(*k*), a Superior Court judge entered summary judgment in favor of the commission. The plaintiff appeals from the judgment and the denial of his motion to amend the judgment.[2]

The principal question presented by this appeal is whether the plaintiff, a member of the Bristol-Plymouth Regional Vocational Technical School District School Committee (regional school committee), in circumstances which we shall detail, was subject to the State conflict of interest law.

We draw the essential facts from the findings of fact of the commission, all of which were supported by substantial evidence. At all relevant times, the plaintiff was president, part owner (fifty percent) and employee of Silver City Donut, Inc., a corporation which operated a Honeydew doughnut franchise (the doughnut shop). The plaintiff began serving as an elected member of the regional school committee in January, 1984. Prior to his election, the doughnut shop sold doughnuts, which were delivered in boxes with a Honeydew logo, to the district school. After his election, other regional school committee members raised a question of conflict of in-

---

superfluous . . . ." *Olde Towne Liquor Store, Inc.* v. *Alcoholic Bevs. Control Commn.*, 372 Mass. 152, 153 n.2 (1977).

[2]The plaintiff's recurring argument on appeal (and the basis of his motion to amend the judgment) is that the judge failed to make findings of fact and rulings of law. The argument displays a fundamental misconception of the function of summary judgment. The procedure is only utilized where, as here (in the view below and on appeal of both parties in this case), "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56 (c), 365 Mass. 824 .(1974). As "findings" of fact are redundant, Mass.R.Civ.P. 52(a), 365 Mass. 817 (1974), expressly makes them unnecessary in decisions on motions under rule 56. Likewise, under the rule, conclusions of law are not required. See *Domegan* v. *Fair*, 859 F.2d 1059, 1066 (lst Cir. 1988). While written decisions of summary judgment motion judges are often helpful, they are not necessary. See *ibid.* In the absence of reasons given by the judge, we may consider all the grounds supporting the allowance of the commission's motion. See *Gallant* v. *Worcester*, 383 Mass. 707, 709 (1981); *Cady* v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. 211, 213 (1983). Here, the judge filed a memorandum of decision in which he merely repeated the statutory (G. L. c. 30A, § 14[7]) standards of review; we may assume, of course, that he applied them.

terest in the event of continued sales. The committee requested that the plaintiff ask for an opinion on the subject from committee counsel. See G. L. c. 268A, § 22. The plaintiff's request, by letter of January 25, 1984, was answered by an opinion of February 15, 1984, in which counsel stated that the plaintiff's corporation could not continue sales to the school district under the State conflict of interest law; the plaintiff's situation fit squarely within the prohibitions of G. L. c. 268A, § 20, counsel concluded. In a cover letter to his opinion, counsel said: "I am sorry that there is no method to allow the business to continue . . . ."

Now the plaintiff entered into an arrangement with his baker, Wilbur McKee, whereby McKee would act as the seller of the doughnuts to the school district under the name McKee Enterprises. Thereafter, the cafeteria manager of the school district ordered the doughnuts in the same way, and the plaintiff kept sales records and decided the price to be charged but the doughnuts were delivered in plain white boxes. Under the arrangement with McKee, the doughnut shop received ninety percent of the amounts paid by the school district and McKee took ten percent in exchange for the delivery of the doughnuts. From March, 1984, to December, 1985, the school district paid McKee Enterprises $13,782 for three hundred nineteen deliveries. Of this amount, McKee paid the doughnut shop $12,403.80.

From April, 1984, to January, 1986, the plaintiff voted eighteen times as a member of the regional school committee to approve cafeteria warrants, each of which included payment to McKee Enterprises. The total payment approved for McKee Enterprises was $13,782. The plaintiff knew that these payments were for doughnuts sold and that the doughnut shop would receive ninety percent of the amounts approved. The commission found that the plaintiff used McKee as a straw to conceal conflict of interest violations and disbelieved the plaintiff's testimony that he thought selling through another person would not violate the law.

The commission concluded that the plaintiff violated G. L. c. 268A, § 19,[3] on eighteen separate occasions by participating in votes involving particular matters in which he had a financial interest and that he violated G. L. c. 268A, § 20,[4] on 319 separate occasions by having a financial interest in a contract with the school district.

1. The plaintiff argues that the school district is not within the definition of "municipal agency" as defined in G. L. c. 268A, § 1(*f*) (1986 ed.), and that he was, therefore, not a "municipal employee," as defined in c. 268A, § 1(*g*)(1986 ed.), subject to the strictures of §§ 19 & 20, which the commission found he violated.

"Municipal agency" is defined by § 1 (*f*) as: "any department or office of a city or town government and any council, division, board, bureau, commission, institution, tribunal *or other instrumentality thereof* or *thereunder*" (emphasis supplied). A "municipal employee" under § 1(*g*) includes a person holding an elected office in a municipal agency "whether serving with or without compensation" and whether full or part-time. The plaintiff contends that as a regional school district is not expressly included in the statutory definition of municipal agency, it is not such an agency.

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered

---

[3]General Laws c. 268A, § 19 (1986 ed.), provides in pertinent part: "(*a*) . . . a municipal employee who participates as such an employee in a particular matter in which to his knowledge he, his immediate family or partner, a business organization in which he is serving as officer, director, trustee, partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest, shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both."

[4]General Laws c. 268A, § 20 (1986 ed.), provides in pertinent part: "(*a*) A municipal employee who has a financial interest, directly or indirectly, in a contract made by a municipal agency of the same city or town, in which the city or town is an interested party of which financial interest he has knowledge or has reason to know, shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both."

in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983). *O'Brien* v. *Director of the Div. of Employment Sec.*, 393 Mass. 482, 487-488 (1984). *Jinwala* v. *Bizzaro*, 24 Mass. App. Ct. 1, 3 (1987).

In determining whether a regional school district is a municipal agency for purposes of the conflict of interest law we focus on the words "or other instrumentality thereof or thereunder" in G. L. c. 268A, § 1(*f*). We look to the ordinary and approved usage of the language and to the method of formation and operation and the purpose of a regional school district.

Webster's Third New International Dictionary at 1172 (1971) defines "instrumentality" as: (1) "the quality or state of being instrumental: a condition of serving as an intermediary . . . (2)(a): something by which an end is achieved: MEANS . . . (b): something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ or subsidiary branch especially of a governing body." Black's Law Dictionary at 720 (5th ed. 1979) defines "instrumental" as: "serviceable, helpful; serving as a means or agent; something by which an end is achieved."

Under Massachusetts law the duty of maintaining public schools and providing public school education is placed with the cities and towns (municipalities). G. L. c. 71, § 1. This duty is delegated to the municipality's elected school committee. G. L. c. 43, §§ 31 & 33. G. L. c. 71, § 37. The school committee is responsible for the proper functioning of the schools and is granted broad discretionary powers to manage the schools and determine educational policy. See *Leonard* v. *School Comm. of Attleboro*, 349 Mass. 704 (1965). Members of municipal school committees are municipal employees under G. L. c. 268A, § 1(*g*). *Graham* v. *McGrail*, 370 Mass. 133 (1976).

Two or more municipalities can together form a regional school district (sometimes RSD) and jointly delegate all or part of their school committees' responsibilities to the RSD. G. L. c. 71, §§ 14B & 16. The obvious purpose of an RSD is to provide for cooperative action by municipalities to build and maintain school systems where it would be an undue burden upon each of the individual municipalities to act separately. Rep. A.G., Pub. Doc. No. 12, at 124, 126 (1962). To accomplish its purpose, an RSD is granted both the powers and duties of a school committee as well as certain powers normally held by municipalities. G. L. c. 71, § 16.

The statutory scheme for the formation and operation of the RSD provides the scope of the member municipalities' control over an RSD. The extent of each individual member's exercise of control is greatest during the planning stage. Then, each municipality that is a potential member of an RSD appoints a three-person RSD planning committee. The committees from the participating municipalities join together to form an RSD planning board. G. L. c. 71, § 14. The planning board, once it determines that the formation of an RSD is advisable, drafts a proposed agreement among the potential members. G. L. c. 71, § 14A.

The proposed agreement must address the organization, operation, and control of the RSD. By its nature, the agreement represents the relinquishment of individual municipality control over education in favor of joint membership control. The agreement also determines the extent of the RSD's powers; the RSD has no authority beyond that granted by its members in the agreement. See *Alford* v. *Southern Berkshire Regional Sch. Dist.*, 2 Mass. App. Ct. 98, 101 (1974). The proposed agreement must specifically include provisions detailing: (1) the terms by which any municipality may join or separate from the RSD; (2) the method of amending the agreement; (3) the procedure for preparing and adopting an annual RSD budget; (4) the method of apportioning expenses and costs of school construction between the member municipalities; (5) the number, composition and method of selecting members of the RSD committee; (6) the types and

locations of schools in the RSD; and (7) the method of providing school transportation. G. L. c. 71, § 14B.

Once established by vote of each municipality, the RSD generally acts as an autonomous entity and is not directly controlled by any of its member municipalities. Direct operational control of the RSD is vested in the members of the RSD committee, who are elected or appointed by each municipality according to the terms of the RSD agreement. G. L. c. 71, § 16A. The RSD is, however, dependent upon the member municipalities for financial support. The RSD committee determines an annual budget and submits the budget to the member municipalities for approval. The budget must be approved by two-thirds of the member municipalities. If the necessary approval is not received, the RSD committee must amend the budget and resubmit it for approval. The member municipalities also have control over the amount of debt the RSD may incur. Each member has veto power over major costs not normally funded in the annual budget. G. L. c. 71, §§ 14D & 16(*d*). See *Plymouth-Carver Regional Sch. Dist.* v. *David M. Crawley Assocs.*, 17 Mass. App. Ct. 901 (1983). What is abundantly clear is that the municipalities involved use the school district as the means to carry out their educational responsibilities and that their participation in formative and financial matters is substantial.

We look next to the purpose of the conflict of interest law. General Laws c. 268A was enacted as part of "comprehensive legislation . . . [to] strike at corruption in public office, inequality of treatment of citizens and the use of public office for private gain." *Everett Town Taxi, Inc.* v. *Everett*, 366 Mass. 534, 536 (1974), quoting from Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650 at 18. We are obligated to construe the law so as to effectuate fully its purpose to the extent that it is reasonable to do so. See *ibid.*; *International Org. of Masters, Mates & Pilots* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 392 Mass. 811, 813 (1984).

We hold that, taking into account the ordinary and approved usage of the statutory language, the nature and function of the entity, and the purpose of the law, a regional school district is an instrumentality of each of its member municipalities and that, therefore, the plaintiff was at the relevant times a municipal employee for purposes of the conflict of interest law.[5],[6]

2. The remaining arguments in the plaintiff's brief are not advanced with anything that can be considered as adequate appellate argument, and we do not discuss them, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 605 n.2 (1990); *Foley* v. *Evans*, 30 Mass. App. Ct. 509, 512-513 n.5 (1991), but our review of the record shows that none of them has merit.

*Judgment affirmed.*

---

[5]The Attorney General concluded in 1963 that regional school districts are instrumentalities within the meaning of G. L. c. 268A, § 1(f), because they are created in response to local need and both their membership and objectives are local in nature. Letter from the Attorney General to A. Harold Castonguay, Esq. (May 23, 1963)(Conflict No. 98). See also Letter from the Attorney General to Hon. Philip A. Quinn (Mar. 28, 1966) (Conflict No. 384). In 1982, the commission concluded that regional school districts are municipal agencies because they are supported by public funds and provide a service which each municipality is required to provide by law. Letter from the State Ethics Commission to the chairman of the selectmen of town ABC (March 22, 1982) (Conflict No. EC-COI-82-25). The commission characterized a regional school district as an "independent municipal agency," an entity not recognized in terms by § 1(f).

[6]There is no merit to the plaintiff's argument that the explicit inclusion of regional school districts in the definition of "governmental body" in G. L. c. 30B, § 2, a part of the Uniform Procurement Act, inserted by St. 1989, c. 687, § 3, shows that the Legislature did not intend to include regional school districts within the definition of municipal agencies for purposes of the conflict of interest law. The Uniform Procurement Act was inserted some twenty-seven years after the controlling language of the conflict of interest statute appeared in the version now in effect. In any event, "[l]ack of identical language does not automatically prove varying intent." *Goodwin* v. *Department of Pub. Utils.*, 351 Mass. 25, 27 (1966).