JOSEPH P. ZORA, SR., & another[1] *vs.* STATE ETHICS
COMMISSION.

Plymouth. March 4, 1993. - June 24, 1993.

Present: LIACOS, C J NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Limitations, Statute of. Conflict of Interest. Municipal Corporations*, Of-
ficers and employees. *Agency*, What constitutes. *Corporation*, Corpo-
rate entity. *Constitutional Law*, Freedom of speech and press, Jury.
*Administrative Law*, Agency. *Practice, Civil*, Jury trial. *Words*, "Spe-
cial municipal employee."

General Laws c. 260, § 2A, the three-year tort statute of limitations, was
applicable to adjudicatory proceedings brought by the State Ethics
Commission under G. L. c. 268A, § 17 (*c*), and, since the commission
commenced proceedings within the three-year period set forth in § 2A,
there was no merit to the claim that the proceedings were time-barred.
[646-648]

Substantial evidence supported the finding of the State Ethics Commis-
sion, after a hearing held pursuant to the provisions of G. L. c. 268A,
§ 17 (*c*), that certain officials alleged to have violated the State conflict
of interest law were "regular" and not "special" municipal employees
during the relevant time period. [648-650]

In a proceeding before the State Ethics Commission culminating in a de-
termination that certain public officials had violated the State conflict
of interest law, substantial evidence supported the finding of the com-
mission that the officials had acted improperly as agents for another.
[650-651]

General Laws c. 268A, § 17 (*c*), as applied to a public official who ap-
peared before a town's conservation commission on behalf of others, did
not violate the official's right of free speech under the First Amendment
to the United States Constitution, where it was only the official's con-
duct in representing others which constituted the official's violation of
the State conflict of interest law. [651]

This court declined, in the absence of extraordinary circumstances, to in-
terfere with the State Ethics Commission's exercise of its discretion in
determining to institute formal adjudicatory proceedings against certain

---

[1]Joseph P. Zora, Jr. The plaintiffs are father and son.

public officials for their alleged violations of the conflict of interest law, rather than to offer them a private disposition of the matter. [651-652]

Public officials who were determined to have violated the State conflict of interest law, after adjudicatory proceedings brought by the State Ethics Commission under G. L. c. 268A, § 17 (*c*), were not denied their right to a jury trial under art. 15 of the Massachusetts Declaration of Rights; furthermore, the power of the Commission to impose civil penalties for violations of G. L. c. 268A did not implicate the right to a jury trial in criminal cases under art. 12 of the Massachusetts Declaration of Rights. [652-653]

CIVIL ACTION commenced in the Superior Court Department on May 10, 1989.

The case was heard by *Robert S. Prince*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Donald J. Fleming* for the plaintiffs.

*Diane M. Meibaum* for the defendant.

GREANEY, J. After an adjudicatory hearing, the State Ethics Commission (commission) determined that the plaintiffs, Joseph P. Zora, Sr. (Zora Sr.), and Joseph P. Zora, Jr. (Zora Jr.), had violated the State conflict of interest law covering public officials and employees. See G. L. c. 268A, § 17 (*c*) (1990 ed.).[2] Due to certain mitigating circum-

---

[2] General Laws c. 268A, § 17 (1990 ed.), reads in pertinent part as follows:

"No municipal employee shall, otherwise than in the proper discharge of his official duties, act as agent or attorney for anyone other than the city or town or municipal agency in prosecuting any claim against the same city or town, or as agent or attorney for anyone in connection with any particular matter in which the same city or town is a party or has a direct and substantial interest. . . .

"A special municipal employee shall be subject to paragraphs (*a*) and (*c*) only in relation to a particular matter (*a*) in which he has at any time participated as a municipal employee, or (*b*) which is or within one year has been a subject of his official responsibility, or (*c*) which is pending in the municipal agency in which he is serving. Clause (*c*) of the preceding sentence shall not apply in the case of a special municipal employee who serves on no more than sixty days during any period of three hundred and sixty-five consecutive days."

stances, the commission did not impose fines or other civil sanctions on either plaintiff. See G. L. c. 268B, § 4 (1990 ed.). The plaintiffs filed a complaint for judicial review in the Superior Court and the commission counterclaimed for affirmation of its decision. See G. L. c. 30A, § 14 (1990 ed.); G. L. c. 268B, § 4 (*k*). Following a hearing on cross motions for summary judgment, a Superior Court judge entered judgment in favor of the commission. The plaintiffs appealed, and we transferred the case to this court on our own motion.

The plaintiffs raise numerous challenges in this appeal, both procedural and substantive, to the commission's determination that they committed violations of the State conflict of interest law.[3] The plaintiffs argue that: (1) the adjudicatory proceedings in this case were barred by the applicable statute of limitations; (2) the commission's finding that both plaintiffs were "regular" and not "special" municipal employees was not supported by substantial evidence; (3) the commission's finding that both plaintiffs acted as agents for another was not supported by substantial evidence; (4) the application of G. L. c. 268A, § 17, to Zora Sr. violated his right of free speech under the First Amendment to the United States Constitution; (5) the commission abused its discretion by authorizing adjudicatory proceedings in this case; and (6) the plaintiffs were denied their right to a jury trial under art. 15 of the Massachusetts Declaration of Rights. We reject each of these arguments and affirm the Superior Court judgment upholding the decision and order of the commission.

---

[3]Several of the plaintiffs' arguments are bald assertions of error, lacking legal argument and authority, and thus not advanced in a manner which rises to the level of appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); *Graham* v. *Quincy Food Serv. Employees Ass'n & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 605 n.2 (1990); *McMann* v. *State Ethics Comm'n*, 32 Mass. App. Ct. 421, 428 (1992). As is within our discretion, we address those arguments which warrant discussion. Although we decline fully to address certain arguments which were not adequately presented, our review of the record shows that none of them has merit.

We draw the pertinent facts from the findings of the commission. At all times relevant to this case, Zora Sr. was a member of the board of selectmen of the town of Marion and his son, Zora Jr., was a member of the Marion conservation commission (MCC). In the early 1960's, Zora Sr. and his wife purchased approximately seventy-five acres of land in Marion which Zora Sr. intended to develop for single-family housing. In January, 1972, a corporation, Zora Enterprises, Inc., was formed pursuant to G. L. c. 156B, "to carry out the business of developing and improving real property." Zora Sr. was named president and treasurer of the corporation, his wife was named clerk, and their children were named directors. By June, 1983, title to the land previously held by Zora Sr. and his wife had been transferred to Zora Enterprises, Inc. In June, 1983, Zora Enterprises, Inc., filed a plan at the Plymouth County .registry of deeds for subdivision of the land (including additional land purchased subsequent to the original seventy-five acres) into forty-five lots.

On February 6, 1985, Roy and Sheila Rider and Zora Enterprises, Inc., entered into a purchase and sale agreement for the purchase of lot 45. The agreement was conditioned on the satisfactory performance of a percolation test to be performed on or before February 20, 1985. Because lot 45 lies lower than fourteen and one-half feet below sea level, it is subject to the Massachusetts Wetlands Protection Act, G. L. c. 131, § 40 (1990 ed.), and under the jurisdiction of the MCC. In connection with their planned purchase of lot 45, the Riders filed a required notice of intent with the MCC stating their intention to construct a house and install a swimming pool. A notice of intent is similar to an application for permission to build and seeks a permit, otherwise known as an order of conditions, to perform work on land subject to § 40. It appears that the Riders included the results of the percolation test with their notice of intent.

On March 27, 1985, the MCC held a public hearing on the Riders' notice of intent. At this hearing, Zora Jr. announced that he would not participate because of his father's financial interest in the subject property. After Roy Rider

presented his notice of intent, MCC member John Rockwell informed the MCC that he had gone to the property several days before and had dug some holes in the land. Rockwell said that the property seemed very wet and expressed his concern that the water table was in fact higher than reported. He suggested that a second percolation test be done on the lot at the town's expense. The MCC voted to conduct a second test and continue the hearing on the Rider matter until the additional information was submitted. Zora Sr. considered this vote as an attack on his integrity since it raised an inference that false percolation test data had been submitted to the MCC. Sometime prior to the next scheduled meeting of the MCC, Zora Sr. made contact with Janice Mendes, chairman of the MCC, and threatened a lawsuit if anyone set foot on lot 45.

The next meeting of the MCC occurred on April 10, 1985. Zora Jr. attended this meeting to obtain information for his father regarding the continuance on the Riders' notice of intent. At this meeting, Zora Jr. stated that he was there as agent for Zora Enterprises, Inc. His presence as "agent" and not as "member" was noted in the minutes. Zora Jr. stated his opinion that the MCC did not have authority to order a second percolation test because the test was the obligation of the applicant. He also stated his opinion that the MCC did not have the right to dig on lot 45. Mendes informed Zora Jr. that the Riders' notice of intent could not be processed without a site inspection and, because of Zora Sr.'s threats of litigation, she was now unwilling to perform the inspection without written permission from Zora Sr. Zora Jr. informed the MCC that Zora Sr. had already granted permission to go on the property. Zora Sr. confirmed this permission in a telephone conversation with Mendes, subject to the conditions that his representative be present at any inspection and that the MCC refrain from digging holes on the property.

On April 12, 1985, the MCC performed a site inspection of lot 45. Six members of the MCC, including Zora Jr., Mendes, and Rockwell were present, along with a representative of the firm which had conducted the original percolation

test and a representative of the wetlands division of the Department of Environmental Quality Engineering (now the Department of Environmental Protection). Because Zora Sr. was unable to attend, Zora Jr. was authorized by his father to represent the interests of Zora Enterprises, Inc. Zora Jr. expressed disagreement with the observations and opinions of some MCC members that 50% of the lot contained wetlands vegetation. If the inspection resulted in a determination that the land was wetlands, the value of the land would substantially diminish.

The MCC met on April 19, 1985, to continue the public hearing on the Riders' notice of intent. Zora Sr., Zora Jr., and Roy Rider attended the meeting. Rider authorized Zora Sr. to speak on his behalf regarding the way in which the MCC was administering the Wetlands Protection Act in relation to his notice of intent because Rider believed that Zora Sr. had more expertise in this area. Zora Sr. addressed the MCC at length, criticizing various aspects of their procedures. He also submitted a memorandum, as president of Zora Enterprises, Inc., detailing his objections to the MCC's conduct. Among other things, the memorandum confirmed that Zora Jr. was acting as a representative of Zora Enterprises, Inc., with regard to the pending notice of intent.

Following Zora Sr.'s presentation, the MCC discussed the question of the deadline for its decision on the Riders' notice of intent. The consensus among the members was that the MCC had three more weeks in which to issue its ruling under the applicable regulation. Zora Jr. disputed this, stating that the three-week period ran from the date of the original hearing and that the MCC had to render its decision that day. After the Zoras left the meeting, the MCC voted to issue an order of conditions (permit) to the Riders.

The MCC met again on April 24, 1985. Both Zora Sr. and Zora Jr., accompanied by an attorney, attended the meeting. Zora Sr. provided the MCC with a letter from an engineer who had performed a second percolation test on lot 45. The Zoras were then informed that the order of conditions had been granted to the Riders at the previous meeting. As the

Zoras left, Zora Jr. commented "you guys have a lot of work to do knowing what your procedures are." Following the resolution of the Rider matter, Zora Jr. resumed his participation as a member of the MCC.

Based on the above events, the commission concluded that both Zora Jr. and Zora Sr., as regular municipal employees, had violated G. L. c. 268A, § 17 (*c*), by acting as agents for another before the MCC; Zora Jr. by acting as an agent for Zora Enterprises, Inc., on four occasions, and Zora Sr. by acting as an agent for Zora Enterprises, Inc., and the Riders on two occasions. Although the commission could have imposed substantial fines on both Zoras, see G. L. c. 268B, § 4 (*j*) (3), the commission concluded that the imposition of fines was not warranted. With regard to Zora Sr., the commission found credible his testimony that he believed he held the status of "special municipal employee" under the State conflict of interest law. If Zora Sr. had indeed been a special municipal employee, his conduct before the MCC would not have constituted a violation under § 17 (*c*), because the particular matter at issue, the Rider notice of intent, was not in any way related to Zora Sr.'s official responsibilities. With regard to Zora Jr., the commission concluded that he had made some effort to comply with the State conflict of interest law by not participating as a member of the MCC in matters in which Zora Enterprises, Inc., had a financial interest. Zora Jr. made no effort to conceal either his involvement in the Rider matter or his acting as an agent of a corporation wholly owned by his parents. Furthermore, there was no evidence that Zora Jr.'s improper conduct had any determinative effect on the MCC's decision on the Rider matter. Due to these mitigating circumstances, the commission took no action to sanction the plaintiffs, other than to find that the plaintiffs did in fact violate G. L. c. 268A, § 17 (*c*).

1. *Statute of limitations.* The commission commenced adjudicatory proceedings in January, 1988, more than two years after the relevant events, by filing orders to show cause alleging that the plaintiffs had violated G. L. c. 268A, § 17 (*c*). The plaintiffs have maintained throughout that, in

their particular cases, the commission's adjudicatory proceedings are barred by the two-year statute of limitations set forth in G. L. c. 260, § 5. This two-year statute of limitations applies to actions brought by the Commonwealth to recover fines and penalties under penal statutes. According to the plaintiffs, G. L. c. 260, § 5, should apply to their cases because the only sanction the commission sought in the orders to show cause was the imposition of civil fines. The commission maintains, however, that the proceedings in this case were not time-barred because adjudicatory proceedings under G. L. c. 268A are governed by a three-year statute of limitations.

The question of the appropriate statute of limitations to apply to proceedings under G. L. c. 268A has previously been addressed by this court. In *Nantucket* v. *Beinecke*, 379 Mass. 345 (1979), we were faced with an action that had been brought under G. L. c. 268A, § 21. In that case, we rejected the claim that actions under the State conflict of interest law are not limited by any statute of limitations. Although the Legislature did not explicitly prescribe a period of time within which proceedings under G. L. c. 268A must be brought, the Legislature did intend that such proceedings be time-limited. *Id.* at 348. To determine which statute of limitations governs actions under § 21, we looked to the essential nature of an action brought under that statute. We concluded that the essence of such an action is the violation of an official duty which sounds in tort and thus is subject to the statute of limitations contained in G. L. c. 260, § 2A, as amended by St. 1973, c. 777. *Id.* at 349. Furthermore, we rejected the notion that the remedy at issue is the primary factor which determines the applicable limitation period. *Id.* at 349.

Although we deal here with a different section of G. L. c. 268A, the essential nature of adjudicatory proceedings brought under § 17 (*c*) is precisely the same as the nature of actions brought under § 21. In fact, § 21 deals only with certain remedies which are available when there has been a "violation of section two, three, eight, or sections fifteen to

twenty, inclusive" of G. L. c. 268A. It is more than obvious that the essence of adjudicatory proceedings brought under § 17 (*c*) is breach of official duty. Our holding in *Nantucket* directly controls the issue of the statute of limitations in this case. Accordingly, since the commission commenced proceedings within the three-year period set forth in G. L. c. 260, § 2A, there is no merit to the plaintiffs' claim that these proceedings are time-barred.

2. *Special municipal employee status.* The plaintiffs assert that the commission's finding that they were "regular" and not "special" municipal employees in March and April, 1985, was not supported by substantial evidence. There is no merit to this claim.

The status of "special municipal employee" is not automatic, but is obtained only when a municipal body, specified in G. L. c. 268A, §1 (*n*), expressly classifies a certain position as holding this status under the State conflict of interest law.[4] The case here was tried on the assumption that, as to

---

[4] "Special municipal employee" is defined in G. L. c. 268A, § 1 (*n*), as appearing in St. 1982, c. 612, § 3, as: "a municipal employee who is not a mayor, a member of a board of aldermen, a member of a city council or a selectman in a town with a population in excess of five thousand persons, *and whose position or employment has been expressly classified by the city council, or board of aldermen if there is no city council, or the board of selectmen as that of a special employee under the terms and provisions of this chapter.* All employees who hold equivalent offices, positions, employment or membership in the same municipal agency shall have the same classification; provided, however, no municipal employee shall be classified as a 'special municipal employee' unless he occupies a position for which no compensation is provided or which, by its classification in the municipal agency involved or by the terms of the contract or conditions of employment, permits personal or private employment during normal working hours, or unless he in fact does not earn compensation as a municipal employee for an aggregate of more than eight hundred hours during the preceding three hundred and sixty-five days. For this purpose compensation by the day shall be considered as equivalent to compensation for seven hours per day. A special municipal employee shall be in such status on days for which he is not compensated as well as on days on which he earns compensation. *All employees of any city or town wherein no such classification has been made shall be deemed to be 'municipal employees' and shall be subject to all the provisions of this chapter with respect thereto without exception.*" (Emphasis supplied.) This definition was amended by St. 1989, c. 289, to increase the population limitation with respect to alder-

Zora Sr., there could have been a classification of him as a special municipal employee within the statute. However, there was no evidence before the commission which demonstrated that, prior to the relevant time period, the Marion board of selectmen had expressly conferred the status of special municipal employee on themselves or members of the MCC.[5] In fact, the evidence showed that, in January, 1986, after the events in issue, the board of selectmen voted to classify members of the MCC and certain other municipal employees (not including members of the board of selectmen) as special municipal employees.[6] Furthermore, the evidence included a letter from Marion's legal counsel to the members of the board of selectmen, dated February 5, 1986, which expressed the opinion (without expressing any reason there-

---

men, city council members or selectmen from 5,000 persons to 10,000 persons.

[5]The plaintiffs produced a 1963 document, titled "Town of Marion - Classification of Town Officials under Chapter 268A," in which members of the board of selectmen were classified as regular municipal employees. Members of the MCC were not mentioned because the MCC did not exist in 1963. Zora Jr. claims that, since all noncompensated Marion municipal employees were classified as "special" in this document, the board of selectmen did not need formally to classify the members of the MCC as special municipal employees. This argument disregards the clear language of G. L. c. 268A, § 1 (n), which requires that a position be expressly classified as holding special municipal employee status.

[6]The plaintiffs claim that an attachment to the May 28, 1985, minutes of the board of selectmen requires that the commission find that they were special municipal employees in March and April, 1985, because the attachment, titled "Special Municipal Employees," exhibits a list which includes members of the board of selectmen and the MCC. The plaintiffs argue that this attachment evidences "reappointment" of these positions as holding special municipal employee status. The commission found, however, that this attachment was not credible evidence on the issue because there was no mention that there had been a vote or even reference to the attachment in the official minutes. This finding is clearly reasonable, especially considering that the board of selectmen did vote in January, 1986, to classify members of the MCC as special municipal employees. See *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 721 (1988) ("Judicial inquiry under the substantial evidence test is limited to determination of whether, within the record developed before the administrative agency, there is such evidence as a reasonable mind might accept as adequate to support the agency's conclusion").

for) that the members of the board of selectmen could not be classified as special municipal employees under the statutory definition.[7] The evidence fully supports the commission's finding that neither plaintiff was a special municipal employee during the period at issue.

3. *Evidence that the plaintiffs acted as agents for another.* The plaintiffs argue that the conclusion that they acted as agents for another was not supported by substantial evidence. According to the plaintiffs, Zora Sr. appeared before the MCC only to protect his personal reputation and, as to Zora Jr., there is nothing in the record to show "that he acted as the agent for [Zora Enterprises, Inc.,] in a meaningful manner." Although the term "agent" is not defined in G. L. c. 268A, the plaintiffs do not argue that the commission's definition of that term, " 'acting on behalf' of some person or entity, a factor present in acting as a spokesperson, negotiating, signing documents and submitting applications," is erroneous. The plaintiffs simply claim that the record does not support the finding that they acted as agents for another.

Contrary to the plaintiffs' argument, there is nothing in the record which supports their assertion that they did *not* act as agents for another. Although Zora Sr. may have appeared at the MCC meetings personally to defend his reputation, the record shows that he also appeared to represent the interests of Zora Enterprises, Inc., and the Riders. The fact

---

[7]In this letter, Marion town counsel also recognized that members of the board of health, who are also members of the board of selectmen, may be classified as special municipal employees under the statutory definition. According to counsel, however, this designation "will sometimes be useful and sometimes not." Zora Sr. argues that he is a special municipal employee for all purposes since he is a member of the board of health (which was classified as holding special municipal employee status in 1963). There is no merit to this argument. Under the statutory definition, certain positions are precluded from holding special municipal employee status. G. L. c. 268A, § 1 (*n*). Therefore, it is clear that a municipal employee may not circumvent the statute by holding two distinct positions and claiming that one of them confers special municipal employee status for all purposes. This status clearly attaches to the position, not the individual, and the board of health and the board of selectmen are separate and distinct entities.

that Zora Sr. asserts one legitimate reason for appearing before the MCC does not excuse the fact that he improperly acted as an agent for others. Furthermore, although Zora Enterprises, Inc., was wholly owned by Zora Sr. and his wife, "[i]t is a basic tenet that a corporation is a legal entity distinct from its shareholders." *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 720 (1988). We need not discuss the claim as to Zora Jr. because the record is replete with evidence that he acted as an agent for Zora Enterprises, Inc., on a matter before the municipal agency on which he served.

4. *Freedom of speech.* Zora Sr. argues that § 17 (*c*), as applied to him, violates his First Amendment rights because he appeared before the MCC to defend his reputation and, as a result, is being punished for the content of his speech. This claim is unsupported in the law.

The State conflict of interest law restricts conduct, not speech or expression. Although the conduct regulated by G. L. c. 268A includes both "speech" and "nonspeech" elements, the purpose of the statute is entirely unrelated to the suppression of free expression. Any incidental limitation of First Amendment freedoms is clearly justified by the Commonwealth's substantial interest in regulating the conduct of public officials. See *United States* v. *O'Brien*, 391 U.S. 367, 376-377 (1968); *National Treasury Employees Union* v. *United States*, 788 F. Supp. 4, 7-9 (D.D.C. 1992), aff'd, 990 F.2d 1271 (D.C. Cir. 1993). Furthermore, there is nothing in the State conflict of interest law which prohibits a public official from speaking on his own behalf on any issue in a public forum. It was only his conduct in representing Zora Enterprises, Inc., and the Riders which constituted Zora Sr.'s violations of § 17 (*c*).

5. *Agency discretion to authorize adjudicatory proceedings.* The plaintiffs contend that the decision to institute adjudicatory proceedings was arbitrary and capricious and, since fines were not warranted, the commission should have simply issued a letter stating that there may have been violations and warned the plaintiffs not to repeat their improper

conduct. In essence, the plaintiffs argue that there should have been a private confidential resolution of the matter and that the decision to authorize formal adjudicatory proceedings was an abuse of the commission's prosecutorial discretion.

On the facts of this case, the decision to offer a private disposition to the plaintiffs rather than proceed with full adjudicatory proceedings would not have been unreasonable. There is nothing which suggests, however, that the commission's decision to authorize adjudicatory proceedings was improper. When an agency, such as the commission, is granted prosecutorial discretion to determine whether to institute formal adjudicatory proceedings, we will interfere with the exercise of that discretion only in cases presenting extraordinary circumstances. See *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 528-529 (1979). Clearly, no such extraordinary circumstances appear here.

6. *Right to jury trial.* The plaintiffs' final argument is that they were denied their right to a jury trial under art. 15 of the Massachusetts Declaration of Rights. According to the plaintiffs, art. 15, which provides the right to a trial by jury "[i]n all controversies concerning property, and in all suits between two or more persons," applies here because the commission could have assessed a fine as a result of its adjudicatory proceedings.

Proceedings conducted by the commission are civil administrative proceedings between the commission, on behalf of the Commonwealth, and a public official. These proceedings do not involve a suit between two or more persons in the sense provided for by art. 15, nor do they involve a controversy concerning property as that phrase is used in art. 15. See *Commonwealth* v. *Mongardi*, 26 Mass. App. Ct. 5, 8 (1988). "Resolving the question of entitlement to a jury trial under art. 15 involves consideration whether analogous civil proceedings existed at common law which required a jury trial." *Id.*, citing *Parker* v. *Simpson*, 180 Mass. 334, 351-355 (1902). Proceedings to adjudicate civil violations of G. L. c. 268A are essentially sui generis and do not express a civil

claim, right, or remedy which was recognized at common law as requiring a jury trial. We thus hold that these adjudicatory proceedings do not involve the right to a jury trial under art. 15. We further note that the power of the commission to impose civil penalties for violations of G. L. c. 268A does not implicate the right to a jury trial in criminal cases under art. 12 of the Massachusetts Declaration of Rights. See *Opinion of the Justices*, 375 Mass. 795, 818-819 (1978).

7. *Conclusion.* For the reasons stated, we affirm the Superior Court judgment upholding the decision and order of the commission.

*So ordered.*