MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
RETIREMENT BOARD & another[1] vs. STATE ETHICS
COMMISSION & another.[2]

Suffolk. January 5, 1993. - March 11, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Massachusetts Bay Transportation Authority*, Retirement. *Common-wealth*, Officers and employees. *Conflict of Interest.* *Words*, "State agency," "Independent state . . . instrumentality."

The Massachusetts Bay Transportation Authority Retirement Board is not a State agency for purposes of G. L. c. 268A, the conflict of interest law. [587-594]

CIVIL ACTION commenced in the Superior Court Department on May 16, 1991.

The case was reported to the Appeals Court by *Hiller B. Zobel*, J., on a statement of agreed facts. The Supreme Judicial Court transferred the case on its own initiative.

*Carl Valvo* for the plaintiffs.

*Thomas Zampino* for the defendants.

*E. Susan Garsh* & *Joanne D'Alcomo* for Globe Newspaper Company & another, amici curiae, submitted a brief.

GREANEY, J. The issue presented in this case is whether the Massachusetts Bay Transportation Authority Retirement Board (board) is a State agency, and its members and employees who administer the Massachusetts Bay Transportation Authority Retirement Fund (fund), are State employees subject to the strictures of G. L. c. 268A (1990 ed.), the State conflict of interest law. Prior to May, 1989, the State

---

[1] The chairman of the Massachusetts Bay Transportation Authority Retirement Board.

[2] The executive director of the State Ethics Commission.

414 Mass. 582 583

Massachusetts Bay Transportation Authority Retirement Board *v.* State Ethics Commission.

Ethics Commission (commission), the agency charged with civil enforcement of the conflict of interest law, had not asserted jurisdiction over the board or an entity similar to the board. In recognition that it is not readily apparent that the provisions of G. L. c. 268A apply to the board, the commission requested that the board seek a formal advisory opinion from the commission relative to its jurisdiction. The board complied with this request. One year later, the commission issued its advisory opinion in which it concluded that the board is a "State agency," as defined in G. L. c. 268A, § 1 (*p*), and, therefore, its members and employees are "State employee[s]," as defined in G. L. c. 268A, § 1 (*q*), within the commission's jurisdiction.[3]

The board, maintaining that it is a private entity and not a State agency, requested reconsideration of the advisory opinion. In response to the commission's decision to adhere to its opinion, the board instituted this action for declaratory relief in the Superior Court, seeking a declaration that it is not a "State agency," as defined in G. L. 268A, § 1 (*p*). See G. L. c. 231A (1990 ed.). The commission counterclaimed for a declaration consistent with its advisory opinion. Following the parties' submission of a statement of agreed facts, a Superior Court judge reserved and reported the case to the Appeals Court, without decision, in accordance with Mass. R. Civ. P. 64, 365 Mass. 831 (1974), and G. L. c. 231, § 111 (1990 ed.). We transferred the case to this court on our own motion. We conclude that the definition of "State agency" in G. L. c. 268A, § 1 (*p*), does not encompass the board.

Before we address the status of the board under § 1 (*p*), we summarize the facts concerning the fund and the board to which the parties have agreed. The fund was established in 1948 by the Metropolitan Transit Authority (MTA), the predecessor to the Massachusetts Bay Transportation Au-

---

[3]A "State employee" under § 1 (*q*), includes a person holding a position, employment, or membership in a State agency. Thus, the relevant inquiry in this case is whether the board is a "State agency" under § 1 (*p*).

584            414 Mass. 582

Massachusetts Bay Transportation Authority Retirement Board *v.* State Ethics Commission.

thority (MBTA),[4] pursuant to a trust instrument (1948 trust instrument) negotiated as part of a collective bargaining agreement between the MTA and Local 589, Amalgamated Transit Union (Local 589). The fund is a trust which holds pension assets for the exclusive benefit of its members, current and past employees of the MBTA (and MTA) who are both union and nonunion members, and their beneficiaries. The contributory retirement plan (pension plan) negotiated by the MTA and Local 589 was established by the MTA's adoption of the "Rules and Regulations of the [MTA] Retirement Fund" (1948 rules), and these rules were incorporated into the preexisting collective bargaining agreement. The 1948 rules covered over-all administration of the fund, including membership, benefits, and contributions. The board was established under the 1948 rules as a seven-member body responsible for the management and administration of the fund. The composition, voting procedures and compensation of the board were specifically addressed in the 1948 rules.

From 1948 to 1980, in accordance with the 1948 trust instrument, the assets of the fund were held and managed by the Old Colony Trust Company and its successor, The First National Bank of Boston (bank). In 1980, the MBTA, with the approval of the board, terminated the 1948 trust instrument and contemporaneously restated the trust in the 1980 trust agreement, naming the board as trustee. The 1980 trust agreement was executed by the MBTA, Local 589, and the board. Pursuant to this agreement, management of fund assets was transferred from the bank to the board.

The 1948 rules are no longer in effect, but were replaced in 1970 by a "pension agreement" between the MBTA and its employees. The current pension agreement, which in-

---

[4] In 1964, the Legislature passed St. 1964, c. 563, which abolished the MTA and replaced it with the MBTA. The MBTA was directed to "continue payment of pensions and retirement allowances under and in accordance with the present pension plan and authorizations of the board of trustees of the [MTA], as from time to time modified by the directors [of the MBTA]." St. 1964, c. 563, § 19.

414 Mass. 582                                              585

Massachusetts Bay Transportation Authority Retirement Board *v.* State Ethics Commission.

cludes subsequent amendments to the 1970 agreement, is a direct descendent of the 1948 rules. The provisions relating to the board have been maintained with only minor changes over the years. Under the pension agreement, the board is composed of the following seven members: three persons appointed by the MBTA, one of whom must be an MBTA director while the other two need not be otherwise affiliated with the MBTA; two persons appointed by Local 589; one person elected by a vote of members of the fund who are not members of Local 589 but are either management employees or members of unions other than Local 589; and one "honorary" or neutral member who is elected by the other six members of the board and does not normally vote on board matters. The board is responsible for carrying out the provisions of both the pension agreement and the 1980 trust agreement. As trustees, the board members understand that they must act in accordance with a fiduciary duty to serve the best interests of the members of the fund.

Contributions paid into the fund are determined by negotiation between the MBTA and its employees and the agreed-upon percentages are included in the provisions of the pension agreement. Under the current agreement, 16.9085% of the MBTA's payroll attributable to fund members is contributed to the fund, of which the fund members contribute 4% and the MBTA contributes 12.9085%. In 1989, for example, fund members contributed $9,821,769 and the MBTA contributed $31,567,692. The Commonwealth has never appropriated a contribution to the fund. Additions to the fund also include investment income earned on fund assets. Investment income in 1989 was $42,952,229. Contributions made to the fund by the MBTA are irrevocable. Fund assets, including contributions and investment income, may not be diverted from the fund, but must be used for the exclusive benefit of fund members, both current and retired, and their beneficiaries.

The fund is operated on a day-to-day basis by an executive director and a staff of six employees who are not MBTA employees but employees of the board. The board supervises

and controls its employees and pays their compensation. The board's employees have never been supervised or paid by the MBTA or any other department or agency of State government. They do not participate in the State retirement system and are not covered by the Commonwealth's group insurance. Unlike MBTA employees, they are ineligible for the Commonwealth's deferred compensation program and are not public employees for workers' compensation purposes. Also, unlike the retirement benefits paid to MBTA and other State employees, the retirement benefits paid to board employees on termination or retirement are subject to State taxation. The 1980 trust agreement provides that compensation of board employees and board members, as well as all other expenses of administering the fund, are to be paid from the fund. The MBTA does not have a line item in its budget for the board's operation or maintenance.

Throughout their history, the fund and its board have been treated by State regulators, other than the commission, as a private entity. The fund has never been audited by the State Auditor and the board's operations have never been reviewed or made subject to the regulatory jurisdiction of the division of public employee retirement administration, the pension reserves investment management board, or their predecessors. The board does not receive office space, furniture, or equipment from the MBTA or the Commonwealth, but rents private office space in Boston. Its leases have never been subjected to approval by the division of capital planning and operations, the superintendent of State buildings, or the MBTA's real estate department.

The board does not exhibit characteristics commonly associated with traditional State agencies nor does the board appear to be a part of the MBTA. Neither the fund, the board, nor its employees have ever asserted governmental immunity in litigation. The board has always been advised and represented by privately retained counsel. Judgments against the board are not the obligations of the MBTA or the Commonwealth and the MBTA does not guarantee the obligations of the fund. The board purchases general liability and casualty

insurance from a private carrier while the MBTA and the Commonwealth are self-insured. In a 1970 legal opinion, the MBTA's acting general counsel opined that the "[b]oard is a separate entity, distinct from either the [MBTA] or [Local] 589."

We turn to the application of the definitional statute to the board. "State agency" is defined by G. L. c. 268A, § 1 (*p*) as: "any department of state government including the executive, legislative or judicial, and all councils thereof and thereunder, and any division, board, bureau, commission, institution, tribunal or other instrumentality within such department, and any independent state authority, district, commission, instrumentality or agency, but not an agency of a county, city or town." Recognizing that the board does not fall in the first category described because it is not within any of the departments of State government, the commission takes the position that the board is an "independent state . . . instrumentality." This conclusion was reached by the application of a four-factor jurisdictional test developed by the commission to determine the status of an entity for purposes of G. L. c. 268A.

Under this jurisdictional test, in which no one factor is dispositive, the commission examined: (1) the means by which the board was created (e.g., legislative or administrative action); (2) the board's performance of some essentially governmental function; (3) whether the board receives or expends public funds; and (4) the extent of control and supervision exercised by government officials or agencies over the board. The commission found that, on balance, the factors indicate that the board is a State agency. The board rejects the commission's jurisdictional test as "an ad hoc exercise of legislative line-drawing" and further asserts that the commission reached an erroneous conclusion in its application of each of the four factors to the board. It is the board's position that the Legislature did not intend to include entities such as the board in the term "independent state . . . instrumentality."

Neither the word "instrumentality," nor the term "independent state . . . instrumentality," is defined in § 1 (*p*). "Instrumentality," a word which often appears in definitional statutes relating to governmental entities, has been noted for its susceptibility to varying interpretation depending on the statutory context in which it is used. See *Krupp* v. *Lincoln Univ.*, 663 F. Supp. 289, 291 (E.D. Pa. 1987). Here, the difficulty of interpretation is compounded by the addition of the more specific term "independent state" to the word "instrumentality." "When [a term] of a statute is imprecise or ambiguous, it is our duty to give that [term] a reasonable construction, taking into account the legislative purpose and the statute as a whole." *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 285 (1991).

Contrary to the board's assertion that the commission's jurisdictional test is "misconceived," we believe that the test provides an appropriate starting point for determining whether an entity is an instrumentality for purposes of G. L. c. 268A. The test focuses on the method of formation, operation, and purpose of the entity, all factors which the Appeals Court recently noted to be central to the question of an entity's status as an "instrumentality" under the conflict of interest law. See *McMann* v. *State Ethics Comm'n*, 32 Mass. App. Ct. 421, 425 (1992) (regional school district created by two or more municipalities to carry out their educational responsibilities is a municipal instrumentality under G. L. c. 268A, § 1 [*f*]). Furthermore, as the commission points out, this test is similar to the test employed by the Internal Revenue Service (IRS) when it considers whether an entity is an "instrumentality" under the Federal tax code. Rev. Rul. 57-128, 1957-1 C.B. 311.[5] We note, however, that the commis-

---

[5] "In cases involving the status of an organization as an instrumentality of one or more states or political subdivisions, the following factors are taken into consideration: (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public

414 Mass. 582                                      589

Massachusetts Bay Transportation Authority Retirement Board *v.* State Ethics Commission.

sion's test fails to include an important consideration that appears in the IRS test: "whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner." *Id.* When we analyze the commission's four factors, as we shall in a moment, taking into account the private interests of the MBTA employees in the fund as well as the private nature of the board, the balancing of the factors indicates that the board is not an instrumentality for purposes of G. L. c. 268A.

The first factor considered by the commission is the means by which the entity was created. The MTA created both the fund and the board in 1948 pursuant to obligations imposed by its collective bargaining agreement with Local 589, a private organization.[6] Notably absent from the creation of the board is any action by the Commonwealth. There is no statute, regulation, or executive order which addresses the establishment of the fund or the board. The commission acknowledges that its jurisdictional test calls for some "legislative underpinning" for the creation of a public instrumentality and points to the 1964 statute that abolished the MTA and created the MBTA in its place. St. 1964, c. 563. According to the commission, this statute provides indirect legislative underpinning for the creation of the board because the newly-created MBTA is directed to honor the MTA's obligations under the 1948 pension plan and the Legislature implicitly recognized that the board administers a pension plan which is "of the [MBTA]." St. 1964, c. 563, § 19. While it is

---

authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses." Rev. Rul. 57-128, 1957-1 C.B. 311, 312.

[6]The commission acknowledges that the board was originally created in 1948, but contends that it did not become a distinct entity until 1969, when it hired its own staff and began to lease its own property. We reject this contention. While the hiring of staff and the lease of property may have altered the day-to-day functioning of the board, it is clear that the board was created as a distinct legal entity in 1948.

obvious that the board would not exist but for the existence of the MBTA, it is also obvious that the 1964 statute has no connection to the creation of the board or the fund in 1948, but simply recognized their continuing existence following the abolishment of the MTA. We cannot discern any legislative underpinning, even indirect, for the creation of the board.

The second factor the commission considered is whether the board performs some "essentially governmental function." In its advisory opinion, the commission states that the board's sole purpose is "to provide and administer pensions and other benefits" to employees of the MBTA, a State agency. By stating that the board "provides" pension benefits to MBTA employees, the commission misconstrues the functions of the board. The MBTA and its employees, not the board, provide the funds which are paid by the board as pension benefits. The board's functions are to administer the pension plan and manage the fund assets from which the pension benefits are to be paid. Clearly, these functions, which are fiducial in nature and performed most often by private entities, are not "essentially governmental" functions. The fact that the Commonwealth may perform these functions for the benefit of certain State employees does not transform the nature of these functions to governmental. Furthermore, although the board's purpose is to act on behalf of MBTA employees, it is the private interests of these employees which are primarily affected by the actions of the board. While not conclusive, this factor also indicates that the board is not an instrumentality under G. L. c. 268A.

The commission appears to have placed significant weight on the third factor, whether the entity receives or expends public funds. In analyzing this factor, the commission focuses on the pension plan's receipt of substantial funding each year from the MBTA, a public body, and the continuing interest of taxpayers and the government in the use of public funds. The commission concedes, however, that the receipt by an entity of substantial funding from a State agency does not necessarily indicate that the entity is a public instrumental-

ity. For example, the MBTA contributed over $36,000,000 on behalf of its employees to six private health care providers in 1989, yet the commission recognizes that it would be absurd to suggest that these entities are public instrumentalities. The analysis of this factor, therefore, should focus on the use of the public funds received by the entity in question, taking into consideration the private interests involved.

The public funds contributed by the MBTA to the pension plan, like the public funds paid to the private health care providers, are a contractually determined form of employee compensation. The board has no authority whatsoever to determine the amount of funding contributed each year by the MBTA. Once transferred out of the MBTA's custody, the contributed funds are irrevocable. The assets of the pension fund are beneficially owned by its members, retired members, and their beneficiaries. Neither the MBTA nor the Commonwealth has a proprietary interest in the pension fund. See *Springfield Safe Deposit & Trust Co.* v. *Stoop*, 326 Mass. 363, 365 (1950). Thus, the public funds contributed by the MBTA, like wages, become private in nature once they are paid. See *Louisiana State Employees' Retirement Sys.* v. *State*, 423 So. 2d 73, 75 (La. Ct. App. 1982). The significant private interests of the pension fund members, and their beneficiaries, far outweigh any public or governmental interest in the funds contributed by the MBTA.

The final factor considered by the commission is the extent to which the government controls or supervises the board. According to the commission, this factor indicates that the board is a public instrumentality because the voting structure of the board gives the three members appointed by the MBTA a significant degree of control over board actions. The commission acknowledges that the MBTA appointees do not have direct voting control, but claims that they have veto power over board decisions which satisfies the control factor. See *McMann* v. *State Ethics Comm'n, supra* at 427. Examination of the voting structure reveals, however, that both the MBTA appointees and the employee appointees (appointed by Local 589 and members of the fund) have veto power over

board actions because affirmative action by the board requires at least two votes from both groups.[7] Furthermore, the issue of control must be considered in the context of each board member's role as a fiduciary under the trust. As trustees, the board members owe their primary loyalty to the members and beneficiaries of the fund, and not to the MBTA, Local 589, or any specific employee group. See *NLRB* v. *Amax Coal Co.*, 453 U.S. 322, 329-330 (1981); *Anderson* v. *Bean*, 272 Mass. 432, 447-448 (1930). See also 1 Scott, Trusts § 2.7 (4th ed. 1989). They cannot be controlled in the traditional sense by any outside body. The commission admits, in fact, that the MBTA appointees exercise their individual judgment in accordance with their fiduciary duty and do not always agree with the positions taken by the MBTA. We can only conclude, based on our application of the commission's jurisdictional test, that the board is not an instrumentality for purposes of the conflict of interest law.

The precise term at issue in this case, "independent state . . . instrumentality," provides a separate and independent basis for our conclusion that the board is not a State agency under § 1 (*p*). This term, which refers only to the State and not to any subsidiary body of State government, indicates that there must be a direct relationship between the Commonwealth and the entity at issue.[8] In this case, any connec-

---

[7]The pension agreement provides that affirmative action by the board ordinarily requires at least four votes, including the votes of at least two of the members appointed by the MBTA and the votes of two other members, not including the honorary member. In the event the board is unable to reach a decision under these rules, any of the six active members may invite the independent honorary member, who does not usually vote, to cast the deciding vote. The honorary member receives no compensation, other than a per diem allowance for his services, and is not supervised or controlled by State agencies or officers.

[8]The board suggests that the Legislature intended this term to include certain "autonomous political bodies" which were each expressly referred to as a "public instrumentality" in the enabling statutes in which each was established. See, e.g., St. 1952, c. 354, § 3 (Massachusetts Turnpike Authority); St. 1956, c. 465, § 2 (Massachusetts Port Authority); St. 1966, c. 708, § 3 (Massachusetts Housing Finance Agency). See also Buss, The Massachusetts Conflict of Interest Statute: An Analysis, 45 B.U.L. Rev. 299, 309 (1965).

tion between the board and the Commonwealth is entirely indirect and results only from the board's relationship with the MBTA, an independent State authority. Thus, even if the board could be considered an instrumentality under G. L. c. 268A, it could only be an instrumentality "of the [MBTA]." The commission agrees with this conclusion.

The language employed by the Legislature in § 1 (*p*) makes clear that an instrumentality of an independent State authority is not included in the definition of State agency. In contrast to the language in the first category of § 1 (*p*), which includes in the definition of State agency any "instrumentality within" the departments of State government, and the language in § 1 (*f*), which includes in the definition of municipal agency the described subsidiary bodies of the municipality "or other instrumentality thereof or thereunder," the language in the second category of § 1 (*p*) lacks specific words of inclusion. "[W]hen the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present." *Hartford Ins. Co.* v. *Hertz Corp.*, *supra* at 283. See *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982); *First Nat'l Bank* v. *Judge Baker Guidance Ctr.*, 13 Mass. App. Ct. 144, 153 (1982). The absence of inclusive words, such as "within," "of," or "thereof or thereunder," indicates the intention of the Legislature not to include an instrumentality of an independent State authority in the definition of "State agency."

The final argument raised by the commission concerns the application of the Federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. (1988), to the board. Since it appears that the MBTA pension plan is exempt from the provisions of ERISA, the commission argues that the State conflict of interest law should apply to the plan. See 29 U.S.C. §§ 1002(32), 1003(b)(1) (1988). This argument is misplaced. First, the commission fails to recognize that the Federal ERISA, which was enacted ten years after G. L. c. 268A, has no bearing on the status of the board under the State conflict of interest law.

Second, the two statutes were enacted for different purposes. ERISA was enacted in order to remedy certain long-standing abuses and deficiencies in the area of private pension plans, see *Rose* v. *Long Island R.R. Pension Plan*, 828 F.2d 910, 913 (2d Cir. 1987), cert. denied, 485 U.S. 936 (1988), whereas G. L. c. 268A was enacted to remedy corruption in public office as well as the use of public office for private gain. See *Everett Town Taxi, Inc.* v. *Aldermen of Everett*, 366 Mass. 534, 536 (1974); *McMann* v. *State Ethics Comm'n,* 32 Mass. App. Ct. 421, 427 (1992). Clearly, the status of the MBTA pension plan under ERISA is simply irrelevant to the board's status under G. L. c. 268A.

For all the reasons stated above, we conclude that the board is not a State agency subject to the conflict of interest law. A declaration consistent with this opinion is to be entered in the Superior Court.

*So ordered.*