Lauriat, Peter M., J.
The plaintiffs in these consolidated cases brought actions against the defendants, Mark J. Rosenshein (“Rosenshein”) and the Charles-town Neighborhood Council Development Committee (“CNC Development Committee”), seeking a declara-toryjudgment under G.L.c. 231A, §1 that the Charles-town Neighborhood Council (“CNC”) is a public body (Count I), and that defendant Rosenshein failed to comply with the requirements of the Open Meeting Law (Count II). The defendants have now moved to dismiss the plaintiffs’ complaints. For the following reasons, the defendants’ motions to dismiss, treated as motions for summary judgment pursuant to Mass.R.Civ.P. 12(c), are denied.
BACKGROUND
On February 5, 2013, the plaintiffs in Civil Action No. 2013-461 filed a Verified Complaint and request for injunctive relief, and an application for a temporary restraining order (‘TRO”) against the defendants, to prevent the defendants from holding a CNC Development Committee meeting scheduled for February 16, 2013. The purpose of the meeting was to discuss zoning changes related to off-street parking requirements in Charlestown. The court (Cosgrove, J.) denied the plaintiffs’ application for a TRO, and the meeting went forward. At the time the court denied the TRO, it ordered the plaintiffs to serve a copy of their pleadings on the Massachusetts Attorney General’s Office (“AGO”) to determine its view on whether the CNC Development Committee met the definition of a “public body” and was therefore subject to the requirements of the Open Meeting Law. The AGO Division of Open Government responded with an explanation of what kinds of groups qualify as “public bodies.”
On February 11, 2013, the plaintiffs in Civil Action No. 2013-538 filed a similar action against the defendants, again seeking a determination that the defendants were bound by the Open Meeting Law. On March 19, 2013, the plaintiffs in both actions filed motions to consolidate the two actions. Their motions were allowed by the court (Cosgrove, J.) on March 26,2013.
Neighborhood Councils such as the CNC were originally established by Mayor Raymond Flynn, together with the Boston Redevelopment Authority (“BRA”), in 1985 and 1986. The purpose of the councils was to provide Boston residents with a forum to discuss development in their neighborhoods. The CNC is made up of 21 community members. The CNC has six standing committees, including the CNC Development Committee, which serves as a forum for members of the community to discuss proposed real estate development projects in Charlestown. Although there are separate committees within the CNC, it appears that all 21 members of the CNC are voting members of each individual committee. In addition, all actions of the CNC Development Committee are subject to the approval or acceptance of the entire CNC.
Another committee within the CNC is the CNC Mitigation Committee. The CNC Mitigation Committee was created to receive and manage approximately one million dollars in funds that the BRA required developers to provide in connection with development projects following the “Big Dig.” The mitigation funds held by the CNC are part of the “Linkage Program,” which was created through the Boston Zoning Commission’s enabling act. See South Boston Betterment Trust Corp. v. Boston Redevelopment Auth., 438 Mass. 57, 64 (2002). The BRA designated the CNC to receive the mitigation funds for distribution to programs in Charlestown, for which the CNC created the CNC Mitigation Committee.[1] The CNC Mitigation Committee has created a ■written application form for parties wishing to receive mitigation funds, and requires those parties to appear before the Mitigation Committee at a closed meeting. The Mitigation Committee thereafter chooses groups to receive some of the mitigation funds and instructs the frill body of elected members of the CNC to approve the distribution amounts.
DISCUSSION
The defendants have moved to dismiss all of the plaintiffs’ claims. Both parties have submitted affidavits and exhibits to support their positions. A motion to dismiss under Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted may be treated as a motion for summary judgment if matters outside the pleadings are presented and not excluded by the court. Mass.R.Civ.P. 12(c); see Watrosv. Greater Lynch Mental Health & Retardation Ass’n, 421 Mass. 106, 109 (1995). This is appropriate where the court advises the parties of its intention to do so and affords the parties a reasonable opportunity to present material pertinent to a summary judgment motion. See Stop & Shop Cos. Inc. v. Fisher, 387 Mass. 889, 893 (1983).
“A party moving for summary judgment.. . has the burden of demonstrating that there is no genuine *688 issue as to any material fact and that he is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991). The burden on the moving party may be satisfied either by submitting affirmative evidence that negates an essential element of the opposing parly’s case or by demonstrating “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis, 410 Mass, at 716. In deciding a motion for summaiy judgment, the facts must be viewed “in the light most favorable to .. . [the nonmov-ing party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991), citing Graham v. Quincy Food Serv. Employees Ass’n & Hosp., Library & Pub. Employees Union, 407 Mass. 601, 603 (1990).
I. Mootness
The defendants contend that the plaintiffs’ requests for relief are moot because the CNC Development Committee meeting at issue took place in February of 2013. The plaintiffs’ respond that the issue of whether the CNC is a “public body” is a matter of public importance and, without guidance from the court on the issue, similar factual scenarios involving the CNC Development Committee will continue to arise in the future.
Courts must generally only decide cases that present actual controversies. Comm’r of Correction v. McC-abe, 410 Mass. 847, 850 (1991). However, where a dispute is technically moot, the court may still review a petition for declaratory relief “where the issue was one of public importance, where it was fully argued on both sides, where the question was certain, or at least very likely to arise again in similar factual circumstances, and especially where appellate review could not be obtained before the recurring question would again be moot.” Libertarian Ass’n of Mass. v. Sec’y of the Commonwealth, 462 Mass. 538, 548 (2012) (citations omitted).
The CNC meets regularly throughout the year. Although relief as to the February 6, 2013 meeting is no longer available, the issue of whether the CNC Development Committee is required to conform to the standards of the Open Meeting Law is a recurring question that ought to be addressed. While the CNC could voluntarily conform its conduct to meet the Open Meeting Law standards, finally addressing the question of whether the CNC Development Committee is required to do so is a matter of public importance going forward.
II. “Public Body” Subject to Open Meeting Law
The defendants maintain that the CNC Development Committee is not a “public body” under G.L.c. 30A, §18 and is therefore not subject to the Open Meeting Law. The defendants assert that, to the extent the CNC Mitigation Committee has authority to administer funds, this action cannot be attributed to the CNC Development Committee. The defendants further assert that, because the CNC was not established by any legislation and is meant primarily to serve as an advisory body to the BRA, it cannot be deemed a “public body” for purposes of the Open Meeting Law. The plaintiffs contend that the CNC’s authorily to administer funds through the Linkage Program subjects it to the Open Meeting Law because it is “within the government.”
As an initial matter, the defendants’ argument that the role of the CNC Development Committee cannot be viewed in light of the actions or responsibilities of other CNC committees, such as the Mitigation Committee, is unavailing. The CNC members are all eligible to be members of each individual committee. As a result, the actions of the CNC Development Committee and those of the other committees are virtually indistinguishable.
With respect to the argument that the CNC Development Committee cannot be deemed a “public body,” the defendants largely rely on the decision of the Superior Court (Giles, J.) in Day v. BRG 161 South Huntington, LLC, Suffolk County Superior Court, Civil Action No. 2012-4544-B (Giles, J.) (May 17, 2013), for the proposition that the neighborhood councils created by Mayor Flynn do not hold any affirmative duties related to the Boston Zoning Commission. In that case, Judge Giles dismissed the Jamaica Plain Neighborhood Council’s (“JPNC”) complaint to appeal a zoning decision for lack of subject matter jurisdiction. The court held that under the Boston Zoning Enabling Act, the JPNC is not a “municipal board[ ] or officer! 1 that [has] duties to perform in relation to the building code or zoning.” Day v. BRG 161 South Huntington, LLC, at *4. Reliance on the decision in Day does not carry the day for the defendants, however, because the court focused almost entirely on the advisory roles of the JPNC, and did not address or discuss any authority that the JPNC may have to disburse funds. Furthermore, the court in Day stated that “[w]hile the JPNC may be considered a public body subject to the mandates of the [Open Meeting Law], and while noncompliance with the [Open Meeting Law] may tend to show that the JPNC does not hold itself out as a municipal board, a resolution of this question is not necessary for the court’s analysis here.” Id. at 12.
Under G.L.c. 30A, §18, a multiple-member entity is a public body where the entity is “within” government and not excluded from the definition of “public body,” the entity is a “body” empowered to act collectively, and the entity serves a “public purpose.” A group may be “within” government if it primarily performs an essentially governmental function. See MBTA Ret. Bd. v. State Ethics Comm’n, 414 Mass. 582, 587 (1993). Although the defendants rely on their role as an advisory group to suggest that the CNC is not a public *689 body, the receipt and distribution of mitigation funds is a significant aspect of the CNC’s present responsibilities, and distributing funds held in trust by the BRA qualifies as performance of a governmental function. Accordingly, the CNC Development Committee must be deemed a public body subject to the requirements of the Open Meeting Law.
ORDER
For the foregoing reasons, the Defendants’ Motion to Dismiss (Mass.R.Civ.P. 12(b)) Complaint of Plaintiffs [in Civil Action No. 2013-461-C], and Defendant Mark J. Rosenshein, Charlestown Neighborhood Development Committee Motion to Dismiss (Mass.R.Civ.P. 12(b)) Plaintiffs’ Complaint [in Civil Action No. 2013-538-C], treated as motions for summary judgment pursuant to Mass.R.Civ.P. 12(c), are DENIED.

The CNC’s website specifically states that mitigation funds were “deposited in an account in The Cooperative Bank in Charlestown held in trust by the Boston Redevelopment Authority. The CNC has been disbursing these funds by an application process to non-profit organizations in Charles-town . . .”