NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13769

ATTORNEY GENERAL  vs.  MYSTIC VALLEY REGIONAL CHARTER SCHOOL.


Suffolk.      November 3, 2025. - March 11, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Education, Charter school.  Public Records.  Supervisor of
Public Records.  Attorney General.  Statute, Construction.
Practice, Civil, Judgment on the pleadings.



Civil action commenced in the Superior Court Department on
July 31, 2023.

The case was heard by Michael P. Doolin, J., on a motion
for judgment on the pleadings.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Charles M. Waters (Matthew Campbell also present) for the
defendant.
KerryAnne Kilcoyne, Assistant Attorney General, for the
plaintiff.
James Leon Smith & Joseph N. Schneiderman, for Citizens for
Juvenile Justice, amicus curiae, submitted a brief.
Jessie J. Rossman & Suzanne Schlossberg, for American Civil
Liberties Union of Massachusetts, Inc., amicus curiae, submitted
a brief.

GEORGES, J.   This case requires us to decide whether a "[C]ommonwealth charter school," as defined by G. L. c. 71, § 89 (c), is subject to the Massachusetts public records law, G. L. c. 66, § 10.  Mystic Valley Regional Charter School (Mystic Valley) contends that it is not and, on that basis, refused to comply with multiple public records requests.  After the Attorney General commenced this enforcement action, a Superior Court judge (motion judge) granted judgment on the pleadings in the Attorney General's favor, concluding that Mystic Valley is a governmental entity obligated to respond to the requests.

For the reasons explained below, we conclude that Commonwealth charter schools, including Mystic Valley, are "agencies" subject to the public records law.  As a matter of statutory interpretation, a Commonwealth charter school qualifies as an "authority established by the general court to serve a public purpose," G. L. c. 4, § 7, Twenty-sixth, and therefore falls squarely within the class of governmental entities expressly covered by the public records law. Accordingly, we affirm the judgment.[1]

---

[1] We acknowledge the amicus briefs submitted in support of the Attorney General by Citizens for Juvenile Justice and the American Civil Liberties Union of Massachusetts, Inc.

Background.  Mystic Valley is a Commonwealth charter school within the meaning of G. L. c. 71, § 89 (c).  Commonwealth charter schools are tuition-free public schools that operate pursuant to a charter approved by the Board of Elementary and Secondary Education (BESE) and are subject to ongoing oversight by the Department of Elementary and Secondary Education (DESE).  See generally G. L. c. 71, § 89; 603 Code Mass. Regs. §§ 1.00 (2021).

Between January and November 2022, Mystic Valley received several public records requests.  Taking the position that it is not a public entity subject to the public records law, Mystic Valley declined to respond to the requests.  Several requestors appealed to the supervisor of public records (supervisor), who ordered Mystic Valley to comply.  Mystic Valley nevertheless reaffirmed its refusal, asserting in a written response that it "does not fall under the categories of entities handling public documents."  Mystic Valley also cited its limited financial resources and noted that much of the requested information could be found in materials it already submits to DESE.

Because Mystic Valley continued to disregard the supervisor's orders, the supervisor referred the matter to the Attorney General.  See G. L. c. 66, § 10A (b) (authorizing supervisor to notify Attorney General when agency refuses or fails to comply).  The Attorney General directed Mystic Valley

to comply.  When the school failed to respond to a follow-up letter, the Attorney General's office contacted Mystic Valley's legal counsel by telephone and was informed that the school would not comply absent a court order.  The Attorney General then commenced this declaratory judgment action in the Superior Court.

The Attorney General sought declarations that Mystic Valley is a custodian of public records and that it is not exempt from the disclosure obligations imposed by G. L. c. 66, § 10.  The Attorney General subsequently moved for judgment on the pleadings.  After a hearing, the motion judge allowed the motion and declared that Mystic Valley is a custodian of public records and must respond to public records requests pursuant to G. L. c. 66, § 10.  Mystic Valley timely appealed, and we transferred the case to this court on our own motion.

Discussion.  Mystic Valley renews its argument that a Commonwealth charter school does not fall within the statutory categories of governmental entities that create or maintain public records and therefore has no obligation to respond to public records requests.

1.  Standard of review.  We review de novo the allowance of a motion for judgment on the pleadings.  Miele v. Foundation Med., Inc., 496 Mass. 171, 175 (2025).  In doing so, we accept as true all well-pleaded factual allegations of the nonmoving

party -- here, Mystic Valley -- and draw all reasonable inferences in its favor to determine whether those factual allegations plausibly suggest an entitlement to relief. Id. Whether Commonwealth charter schools are subject to the public records law presents a question of statutory interpretation, which we likewise review de novo. Id.

2. The statutory schemes. We begin by summarizing the relevant statutory schemes.

a. The public records law. General Laws c. 66 governs the creation, maintenance, destruction, and, as relevant here, disclosure of public records. The statute reflects the Legislature's recognition that "[t]he public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner" and that broad access to governmental information is "an essential ingredient of public confidence in government" (citations omitted). Attorney Gen. v. District Attorney for the Plymouth Dist., 484 Mass. 260, 262-263 (2020). Consistent with that purpose, the public records law is designed "to give the public broad access to governmental records." Id. at 262, quoting Worcester Tel. & Gazette Corp. v. Chief of Police of Worcester, 436 Mass. 378, 382-383 (2002).

To qualify as a public record subject to disclosure, a document must, among other things, have been created or received by an "officer or employee of any Massachusetts governmental

entity" (quotation and citation omitted).  Attorney Gen., 484
Mass. at 263.  The relevant portions of the statute do not
expressly use the term "governmental entity,"[2] but rather use the
term "agency," which is defined as "any entity, other than a
municipality, that is identified in [G. L. c. 4, § 7, Twenty-
sixth,] as possessing public records" (quotation omitted).[3]
G. L. c. 66, § 6A (a).  That provision sweeps broadly,
encompassing "any agency, executive office, department, board,
commission, bureau, division or authority of the commonwealth,
or . . . any political subdivision thereof, or . . . any
authority established by the general court to serve a public
purpose."[4]  G. L. c. 4, § 7, Twenty-sixth.

b.  Commonwealth charter schools.  The Legislature
authorized charter schools in the Education Reform Act of 1993,
St. 1993, c. 71.  See Doe No. 1 v. Secretary of Educ., 479 Mass.

---

[2] The term "governmental entity" appears once in G. L. c. 66
as part of a relatively recent addition to the statute.  See
G. L. c. 66, § 10B, third par., inserted by St. 2019, c. 73,
§ 1.

[3] While municipalities are, like agencies, subject to the
public records law, see G. L. c. 66, § 10, neither party
contends that a Commonwealth charter school is a municipality.

[4] This quoted language was added to G. L. c. 4, § 7, Twenty-
sixth, as part of an amendment to the definition of "[p]ublic
records."  See St. 1973, c. 1050, § 1.  The amendment brought "a
great many more documents to public view."  Hastings & Sons
Publ. Co. v. City Treas. of Lynn, 374 Mass. 812, 815 (1978).

375, 376-377 (2018). A Commonwealth charter school is "operated under a charter granted by [BESE], which operates independently of a school committee and is managed by a board of trustees." G. L. c. 71, § 89 (c), first par. Each charter is subject to renewal by BESE every five years. See G. L. c. 71, § 89 (dd).

The statute expressly sets forth the public character of Commonwealth charter schools. Indeed, the Legislature has unambiguously designated a Commonwealth charter school as a "public school." G. L. c. 71, § 89 (c), first par. Further, the board of trustees "shall be deemed to be public agents authorized by the commonwealth to supervise and control the charter school." Id. Additionally, students are not charged tuition, see G. L. c. 71, § 89 (m); instead, Commonwealth charter schools are funded through public tuition payments calculated by DESE under a "statutory formula" designed to approximate per pupil spending in district schools. Doe No. 1, 479 Mass. at 379. See G. L. c. 71, § 89 (ff). The State Treasurer pays those amounts directly to the Commonwealth charter schools and reduces State aid to the sending districts accordingly. Id.

3. Application. We begin, as we must, with the words of the statute. Where the statute's language "is clear and unambiguous, we must give effect to its plain and ordinary meaning and . . . need not look beyond the words" (quotation and

citation omitted).  Commonwealth v. Fleury, 489 Mass. 421, 424 (2022).  And in the absence of statutory definitions, we may "derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions" (citation omitted).  Curtatone v. Barstool Sports, Inc., 487 Mass. 655, 658 (2021).  "We do not construe terms in isolation; instead, we consider the specific language of a provision in the context of the statute as a whole."  Garcia v. Steele, 492 Mass. 322, 326 (2023).

Mystic Valley principally contends that it is not subject to the public records law because it is not among the entities enumerated in G. L. c. 4, § 7, Twenty-sixth.  We disagree because we conclude that Commonwealth charter schools fall within the category of "any authority established by the general court to serve a public purpose."  G. L. c. 4, § 7, Twenty-sixth.

The statutory list of entities to which the public records law applies uses the word "authority" twice, first in reference to an "authority of the commonwealth," and later in reference to the broader category of "any authority established by the general court to serve a public purpose."[5]  G. L. c. 4, § 7,

---

[5] "'Public records' shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical

Twenty-sixth.  Although the statute does not define the term "authority" in either context, the Legislature's use of the word "any" in the latter clause, together with its repetition of the word "authority" signals an intent to reach entities beyond governmental bodies traditionally referred to as authorities.

We construe the term "authority" in the latter phrase according to its usual and accepted meaning at the time of enactment.  See Williams v. Board of Appeals of Norwell, 490 Mass. 684, 695 (2022) (applying dictionary definitions from time of bylaw's adoption when interpreting "frontage").  At the time the Legislature adopted the modern enumeration of covered entities, see note 4, above, an "authority" was understood to mean "a body having jurisdiction in certain matters of a public nature."  Black's Law Dictionary 169 (rev. 4th ed. 1968).

Commonwealth charter schools satisfy that definition.  That is, Commonwealth charter schools constitute "a body having jurisdiction in certain matters of a public nature."  They exercise substantial authority over public education matters, including student admissions, curriculum and educational program design, personnel decisions, and school governance.  See G. L.

---

tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any . . . authority of the commonwealth, . . . or of any authority established by the general court to serve a public purpose . . . ."  G. L. c. 4, § 7, Twenty-sixth.

c. 71, § 89 (b), (e), (f), (w).  These legislatively granted powers, exercised to fulfill public educational obligations, establish Commonwealth charter schools as bodies with jurisdiction over matters of public concern.

Additionally, Commonwealth charter schools were incontrovertibly "established by the general court to serve a public purpose."  G. L. c. 4, § 7, Twenty-sixth.  The charter school statute expressly situates that purpose within the public education system by requiring charter schools to "stimulate the development of innovative programs within public education" and to "provide parents and students with greater options in selecting schools."  G. L. c. 71, § 89 (b).  Promoting education is "undoubtedly a public purpose."  Department of Community Affairs v. Massachusetts State College Bldg. Auth., 378 Mass. 418, 425 (1979).  More fundamentally, the provision of tuition-free public education is a constitutional obligation of the Commonwealth.  See Part II, c. 5, § 2, of the Constitution of the Commonwealth.  See also McDuffy v. Secretary of the Executive Office of Educ., 415 Mass. 545, 606 (1993) ("the Commonwealth has a duty to provide an education for all its children, rich and poor, in every city and town of the Commonwealth at the public school level").

We therefore conclude that Commonwealth charter schools are "authorit[ies] established by the general court to serve a

public purpose" and are subject to the public records law.[6]  This interpretation accords with the statute's remedial purpose of promoting governmental transparency and accountability.

Mystic Valley advances two statutory arguments and one public policy argument against this conclusion.  We address each in turn.

a.  Independence and corporate features.  Mystic Valley first contends that Commonwealth charter schools are more akin to private entities than to traditional governmental bodies because they enjoy "significant operational independence" and possess certain corporate features.  More specifically, they each operate independently of a school committee and are governed by a board of trustees authorized to determine, among other things, curriculum, budget, and educational focus.  See G. L. c. 71, § 89 (c), (m), (w).  See also 603 Code Mass. Regs.

---

[6] Regulations promulgated by the supervisor of public records provide an alternative basis for concluding that Commonwealth charter schools are subject to the public records law.  See G. L. c. 66, § 1.  See also McCauley v. Superintendent, Mass. Correctional Inst., Norfolk, 491 Mass. 571, 585 (2023) (consulting regulations to interpret undefined statutory phrases).  The supervisor's comprehensive regulations define public records broadly as materials "made or received by a governmental entity."  950 Code Mass. Regs. § 32.02 (2021).  Critically, "governmental entity" expressly "includes any quasi-governmental agency that is considered a body politic and corporate or public instrumentality."  Id.  Commonwealth charter schools fit squarely within this definition:  the statute identifies them as "bod[ies] politic and corporate."  G. L. c. 71, § 89 (k).

§ 1.10(2)(d). They are also granted certain "powers available to a business corporation formed under [G. L. c. 156B] that are not inconsistent with [the charter school statute]." G. L. c. 71, § 89 (k) (8).

Those attributes, however, do not render Commonwealth charter schools private. Rather, they mirror features of entities we have long recognized as governmental authorities for other purposes. See Spence v. Boston Edison Co., 390 Mass. 604, 607-608 (1983) (housing authority is governmental entity despite corporate characteristics and independence from Commonwealth); Department of Community Affairs, 378 Mass. at 425-426 (building authority is public agency, even as "a hybrid entity" possessing attributes "both of a private corporation and of an executive agency of the Commonwealth"); Opinion of the Justices, 334 Mass. 721, 734-735 (1956) (Massachusetts Port Authority is "a purely public corporation," notwithstanding its corporate form).

Like those entities, Commonwealth charter schools are statutorily designated as "bod[ies] politic and corporate." G. L. c. 71, § 89 (k). See Spence, 390 Mass. at 607, citing G. L. c. 121B, § 3; Department of Community Affairs, 378 Mass. at 419, citing St. 1963, c. 703, § 2; Opinion of the Justices, 334 Mass. at 734. See also St. 1956, c. 465, § 2 (establishing Port Authority and describing it as "a body politic and corporate"). The Legislature commonly employs this designation

when creating entities -- often combining attributes of private corporations and governmental agencies -- to perform essential public functions.  Kargman v. Boston Water & Sewer Comm'n, 18 Mass. App. Ct. 51, 55 (1984), superseded on other grounds by St. 1992, c. 343, § 5.  Whether a particular "body politic and corporate" should be treated as "more public than private" depends on the context and statutory purpose at issue.  Id., quoting Department of Community Affairs, supra at 425.

Here, the charter school statute makes Commonwealth charter schools' public nature manifest.  Charter schools are expressly "public schools," G. L. c. 71, § 89 (c); their trustees are "public agents," id.; they receive public funding that directly affects State aid to municipalities, G. L. c. 71, § 89 (ff); and their employees are public employees for purposes of tort liability, G. L. c. 71, § 89 (y).

Commonwealth charter schools are also subject to extensive State oversight.  BESE -- a State agency whose members the Governor appoints -- grants charters, imposes conditions, evaluates renewal applications, and may revoke a charter for noncompliance.  See G. L. c. 15, § 1E; G. L. c. 71, § 89 (e), (j), (dd), (ee).  See also 603 Code Mass. Regs. § 1.04(3), (7). Commonwealth charter schools must submit annual reports, adhere to State academic standards, and obtain State approval for significant changes to, among other things, governance,

enrollment, curriculum, or location. See G. L. c. 71, § 89 (v), (jj); 603 Code Mass. Regs. § 1.10(1)-(2). The oversight is continuous and substantial, notwithstanding the schools' operational independence from local school committees.

Finally, the operational independence and corporate powers on which Mystic Valley relies do not undermine this conclusion. Those powers are tools the Legislature deliberately provided to advance Commonwealth charter schools' public educational goals. See G. L. c. 71, § 89 (b). Their independence allows Commonwealth charter schools to operate "as laboratories of change, allowing for experimentation to encourage creative ways of addressing the needs of the children of the Commonwealth" (citation omitted). Doe No. 1, 479 Mass. at 377. And because their corporate powers are limited to what is "necessary [and] desirable" to carry out a charter program and may not be exercised "inconsistent[ly]" with the statute's public purposes, G. L. c. 71 § 89 (k), those powers reinforce -- rather than diminish -- Commonwealth charter schools' public character. Indeed, their corporate form does not alter the fundamentally public character of their mission and function.

b. Absence of express designation as governmental entity. Mystic Valley next argues that the Legislature has expressly designated charter schools as governmental entities only for limited purposes, such as conflicts of interest, tort liability,

and collective bargaining, and that the absence of comparable language for purposes of the public records law is dispositive. See G. L. c. 71, § 89 (u) (deeming charter schools "state agenc[ies]" for conflict of interest purposes under G. L. c. 268A); G. L. c. 71, § 89 (y) (deeming charter school employees "public employees" and trustee boards "public employer[s]" for tort liability under G. L. c. 258 and collective bargaining under G. L. c. 150E). That argument invokes the maxim "expressio unius est exclusio alterius": the express inclusion "of one thing in a statute is an implied exclusion of other things not included in the statute." Bank of Am., N.A. v. Rosa, 466 Mass. 613, 619 (2013). We decline to apply the maxim here because doing so would defeat evident legislative purpose. See id. at 619-620.

The public records law is designed "to give the public broad access to governmental records" (citation omitted). Attorney Gen., 484 Mass. at 262. Excluding Commonwealth charter schools -- public schools funded with public money and charged with performing a quintessential public function -- would frustrate this core transparency mandate. It would also undermine the Legislature's express objective of "hold[ing] teachers and school administrators accountable for students' educational outcomes." G. L. c. 71, § 89 (b). We therefore decline to adopt Mystic Valley's argument.

c.  Burden.  Finally, Mystic Valley asserts that compliance with the public records law would impose significant financial burdens and interfere with its educational mission.  These considerations do not change the result.

Cost concerns cannot override clear statutory language.  See Sisk v. Assessors of Essex, 426 Mass. 651, 655-656 (1998) (implied public policy goals cannot overcome clear statutory text); Rosenbloom v. Kokofsky, 373 Mass. 778, 781 (1977) ("We cannot interpret a statute so as to avoid injustice or hardship if its language is clear and unambiguous and requires a different construction").  Nor does the public records law require production regardless of burden or impact on core public responsibilities.  See Friedman v. Division of Admin. Law Appeals, 103 Mass. App. Ct. 806, 807 (2024).  To the contrary, the statute expressly provides mechanisms to mitigate undue burden, including extensions of time and authorization to recover reasonable reproduction costs.  See G. L. c. 66, § 10 (b) (v), (c), (d).[7]

---

[7] The Attorney General does not contend that Commonwealth charter schools fall within the public records law by virtue of an explicit statutory designation.  Instead, she relies on the five-factor test articulated in Massachusetts Bay Transp. Auth. Retirement Bd. v. State Ethics Comm'n, 414 Mass. 582, 587-594 (1993), and applied in Globe Newspaper Co. v. Massachusetts Bay Transp. Auth. Retirement Bd., 416 Mass. 1007, 1007 (1993).  Given our analysis above, however, Commonwealth charter schools fit comfortably within the statutory category of an "authority

Conclusion.  A Commonwealth charter school is an "authority established by the general court to serve a public purpose" within the meaning of G. L. c. 4, § 7, Twenty-sixth, and is therefore subject to the public records law.  The motion judge correctly entered judgment on the pleadings for the Attorney General.

Judgment affirmed.

---

established by the general court to serve a public purpose," and we need not reach that test.

We note, however, that the five-factor test originates outside the public records context.  It derives from a jurisdictional test the State Ethics Commission developed to determine coverage under the conflict of interest law, G. L. c. 268A, and from a test the Internal Revenue Service employed to assess whether an entity qualifies as an "instrumentality" under the Federal tax code.  See Massachusetts Bay Transp. Auth. Retirement Bd., 414 Mass. at 588.  We applied that framework to the Massachusetts Bay Transportation Authority (MBTA) Retirement Board, concluding it was not an "independent [S]tate . . . instrumentality" for conflict of interest purposes.  Id. at 587-592, quoting G. L. c. 268A, § 1 (p).  In a subsequent rescript opinion, without guiding analysis, we invoked the same test to determine whether the MBTA Retirement Board was a "board" of the MBTA -- an authority of the Commonwealth -- for public records purposes.  Globe Newspaper Co., 416 Mass. at 1007.  Since Globe Newspaper Co., we have not meaningfully relied on that test to resolve other entities' public status under the public records law.